ROBERT L. BARBEE et al. v. FARMERS BANK OF POLO et al.; FARMERS BANK, Appellant.

Division Two, February 27, 1912.

1. **CONVEYANCE: Presumption of Delivery: Acknowledgment: Improvements.** The evidence to rebut the inference that a deed was delivered arising from its execution and acknowledgment, from the possession of the grantee and the making of valuable improvements on the land by him, and from other concurrent acts of the parties indicating ownership, such as the payment of taxes by the grantee, must be clear and decisive; otherwise, delivery of the deed and ownership by the grantee will be presumed.

2. ———: ———: ———: ———: **Facts in Evidence.** In 1885 a father purchased eighty acres of land adjoining his home place, and placed his son, who had lately married, in possession, where he continued to reside till 1906. In 1889 the assessment was changed to the son at the request of the father, and thereafter the son continued to pay the taxes until 1897, when the assessment was again changed to the father and his wife, who in 1894 requested a justice of the peace to prepare a warranty deed conveying the land to the son, and the deed was written, and signed and acknowledged by them, but whether or not it was actually delivered is the main matter of controversy. In 1896 the father conveyed the land to his wife, but prior to

that time the son had been arrested for obtaining money under false pretenses, was heavily in debt and pressed by his creditors. In 1900 defendant bank obtained a judgment against the son, execution was levied on his interest in the land, and it was sold to the bank. In 1901 the wife conveyed the land to the son's minor children, and they are the plaintiffs, in this suit to quiet title, claiming title through her deed. The father and his wife admit the making of the deed to the son, but say it was made in 1892, and both they and he deny that it was ever delivered. ' The justice, who is disinterested, testifies that the father and his wife told him at the time that they were giving the land to the son and intended to deliver the deed that day on their way home, but his testimony is denied by both of them. Several witnesses, apparently disinterested, testify that both parents and the son subsequently stated that the deed had been delivered, but all three deny those statements. Subsequent to the making of the deed the son made permanent and lasting improvements, remodeled the house, built corn cribs and otherwise improved the land as a home. The wife testified that she took the deed, which expressed a consideration of $3500, in payment of a note she held against her husband, but she could not tell how long she held the note, nor its amount, nor what it represented. *Held*, that the deed to the son was delivered, and the chancellor erred in finding for plaintiffs.                                    ⟍

3. ———: Deference to Chancellor: Former Contrary Finding by Another Judge: Ejectment as Res Adjudicata. After the bank had bought the land at execution sale, it brought suit in ejectment against the son, obtained judgment, which was affirmed on appeal, and was put in possession. This suit to quiet title was brought by the son's children, to whom the son's mother had conveyed the land after she had obtained a deed from her husband. The substantial evidence at both trials was the same, but at the first trial, at which the issues were determined by the judge sitting as a jury, it was held that the deed made by the son's parents to him prior to his mother's deed to his children and prior to her husband's deed to her, had been delivered to the son at the time it was made, and that the execution sale transferred the title to the bank; and at the trial of this case before a different judge, he found that the deed had not been delivered and therefore the title was in the son's minor children, the plaintiffs. *Held*, that the judgment in the ejectment suit is not *res adjudicata*; but the usual rule of the Supreme Court in equity cases, where the testimony is contradictory, to defer to the finding of the chancellor, ‾who can see and hear the witnesses, does not apply, since there is no reason why deference should be given to the finding of the chancellor who tried this case more than to that of the judge who tried the other.

4. **APPEAL: Equity Suit: Testimony Omitted From Abstract.**
Where the testimony omitted from the abstract consisted of
depositions offered by appellants, and the judgment against
them should, upon the testimony abstracted, be reversed, the
omitted depositions presumably were beneficial to them, if
they had any probative value at all; and respondents not com-
plaining that, if preserved, the omitted depositions would have
any effect on the result, the rule that in equity cases the Su-
preme Court will not undertake to review the evidence unless
the entire testimony is preserved in the record, does not apply.

Appeal from Clinton Circuit Court.—*Hon. A. D.*
*Burnes,* Judge.

REVERSED AND REMANDED (*with directions*).

*M. M. Bogie* and *Farris & Farris* for appellant.

(1) The declaration of law declaring the law to
be that the execution of the deed to W. O. Barbee was
evidence of the delivery of the deed should have been
given. R. S. 1909, sec. 2818; Burke v. Pence, 206 Mo.
338; Benton Land Co. v. Zietler, 182 Mo. 280; Ruckman
v. Ruckman, 32 N. J. Eq. 261; Flint v. Phipps, 16 Ore.
437; Fain v. Smith, 14 Ore. 82; Brown v. Brown, 66 Me.
316; Gould v. Day, 94 U. S. 405; Moore v. Hazelton, 9
Allen (Mass.) 102; Regan v. Howe, 121 Mass. 426. (2)
Failure to state in writing the conclusions of fact
found separate from the conclusions of law is reversi-
ble error. R. S. 1909, sec. 1972; Cochran v. Thomas,
131 Mo. 258; Blount v. Spratt, 113 Mo. 48; Briggs v.
Eggan, 17 Kan. 589. (3) Declarations of law numbers
2 and 4 should have been given, declaring the law to
be that under the evidence W. O. Barbee had acquired
the title to the lands in controversy by the operation of
the Statutes of Limitations before the institution of
this suit. Fields v. Bollinger, 234 Mo. 194; Farmers
Bank v. Barbee, 198 Mo. 470; Land Co. v. Hays, 105
Mo. 143; Crispin v. Hannavan, 50 Mo. 536; Rannells
v. Rannells, 52 Mo. 109. (4) All the issues in this
case were joined and the same evidence heard in an

ejectment suit where the title was the issue between Farmers Bank of Polo and W. O. Barbee, W. L. Barbee and Martha J. Barbee, and the finding being for the defendant Farmers Bank of Polo as to the ownership of fee, unless some new issue was made or some new proof shown, the finding in this case should have been the same. Farmers Bank v. Barbee, 198 Mo. 470; Potter v. Adams, 143 Mo. 665; Mann v. Doerr, 222 Mo. 20; May v. Crawford, 150 Mo. 525; Butler Co. v. Bank, 165 Mo. 459; Bedford v. Skyes, 168 Mo. 8; Estes v. Nell, 140 Mo. 649; Chamberlain v. Waples, 193 Mo. 108; Chapman v. Dougherty, 87 Mo. 620; Sanford v. Herron, 161 Mo. 186; Cline v. Jones, 111 Ill. 563; Reed v. Douthit, 62 Ill. 348; Walker v. Walker, 42 Ill. 311; Wallace v. Burdell, 97 N. Y. 22.

*Frank B. Ellis* and *J. M. Davis & Son* for respondents.

(1) In an equity case this court will not review instructions or declarations of law given or refused by the trial court. This is elementary. Shaffer v. Detie, 191 Mo. 388; Chilton v. Metcalf, 234 Mo. 40; Ellis v. Krutzinger, 31 Mo. 432; Hall v. Harris, 145 Mo. 620. (2) The action of the Farmers Bank v. Barbee, 198 Mo. 465, was an ordinary action in ejectment, in which the answer was a general denial. The judgment in that case is therefore not *res adjudicata* of the title to the premises. Stone v. Perkins, 217 Mo. 599; Fleming v. Tatum, 232 Mo. 692; Sampson v. Mitchell, 125 Mo. 217; Kimmel v. Benna, 70 Mo. 52; Crowl v. Crowl, 195 Mo. 345; Tyler on Ejectment, 585. Plaintiffs acquired their title before the institution of that ejectment suit; they were not parties to it, and no one is a privy to a judgment whose succession to the right of property thereby affected occurred previous to the institution of the suit. They had no right to control the proceedings to make a defense or to adduce or ex-

amine witnesses or to appeal from the decision. Being neither parties nor privies, they are not bound by it. Henry v. Woods, 77 Mo. 281; Debenture Co. v. Johnson, 102 N. W. 382; 1 Freeman on Judgments (4 Ed.), sec. 162; Chase v. Kaynor, 78 Ia. 449; Dull v. Blackman, 169 U. S. 423; 24 Am. & Eng. Ency. Law (2 Ed.), 748, and cases cited; Schnelle v. Barlow, 38 Fed. 857; McWilliams v. Land Co., 35 So. 514; Adams v. Grossman, 228 Mo. 584. (3) This court will act on the presumption that the trial court decided the case correctly, and will affirm the judgment for the reason that it appears from the abstract of the record presented by the plaintiffs that the deposition of Martha J. Cotton, Geo. W. Cotton, and the affidavit of Martha J. Barbee, agreed to be read as her evidence were each read in evidence on the trial and are not contained in the record. Dougherty v. Noble, 138 Mo. 32; State ex rel. v. Jarrett, 183 Mo. 204; Patterson v. Patterson, 200 Mo. 335; Guinnan v. Donnell, 201 Mo. 173; Pitts v. Pitts, 201 Mo. 356; Miller v. McCaleb, 208 Mo. 573. But if the court should review the evidence, notwithstanding such omissions, then it will defer, upon the disputed matters in evidence, largely to the finding of the chancellor who had the witnesses before him, the opportunity of observing their demeanor on the witness stand and their manner in testifying, he being thereby placed in a much better position to judge the weight to be given the testimony of the respective witnesses than this court could have. Phillips v. Trust Co., 214 Mo. 682; Jones v. Thomas, 218 Mo. 540. All the evidence, or its substance, not being preserved in the record, this court will act on the presumption that the trial court decided correctly.

FERRISS, P. J.—Suit under section 2535, Revised Statutes 1909, to determine and quiet title. The controversy arises in this way: In 1885 W. L. Barbee purchased the eighty acres of land in controversy, tak-

ing the title in his own name. This land was adjoining a farm owned by him. His only son, W. O. Barbee, hereinafter called Bud Barbee who had lately married, was placed in possession of this eighty, where he continued to reside until 1906. In 1889 the assessment was changed at the request of the father into the name of the son, who thereafter paid the taxes until 1897, at which latter date the assessment was again changed to W. L. and M. J. Barbee. In 1896, W. L. Barbee conveyed this land to his wife, Martha J. Before this last conveyance was made Bud Barbee had been arrested for obtaining money under false pretenses, was heavily in debt, and pressed by his creditors. On February 8, 1900, the defendant bank obtained a judgment against Bud Barbee in the circuit court of Ray county for something over $1,000. On July 18, 1901, Martha J. Barbee conveyed this land to the minor children of Bud Barbee, who are plaintiffs in this case and who claim title through this conveyance. In June, 1902, an execution was levied upon the judgment obtained by the Bank of Polo upon all the right, title and interest of Bud Barbee in and to this land. At the sheriff's sale the property was purchased by the defendant bank, and a deed made and delivered by the sheriff to the purchaser. Shortly thereafter the defendant bank instituted suit in ejectment against W. L. Barbee, Martha J. Barbee and Bud Barbee, and obtained a judgment which was affirmed in this court (Bank v. Barbee, 198 Mo. 465), and the bank was put in possession.

This suit was filed by the minor children of Bud Barbee, who claim title, as stated above, through the deed from their grandmother. Pending the suit one of the plaintiffs, George, died and W. O. and Lydia Barbee became parties as his representatives.

The bank defends upon the ground that Bud Barbee was the owner of this land when it was sold by the sheriff under execution, and that the bank is now the

owner thereof. It is claimed that this land was given
to Bud Barbee by his father, and also that he acquired
ownership by adverse possession. It is charged in the
answer of the bank that the transfers from W. L.
Barbee, in 1896, to his wife, Martha, and from her to
her grandchildren, were without consideration, and
were made to defraud the creditors of Bud Barbee, and
the court is asked to set aside said conveyances and
confirm the title in the defendant bank.

Judgment below was rendered for the plaintiffs.

A vast number of witnesses appeared on both
sides. The following facts appear without contro-
versy:

Bud Barbee was placed in possession of this land
shortly after his marriage for the purpose of affording
him a home. His parents both say that he was "on
their hands," and they desired to get rid of him. The
property was assessed in his name at the request of
his father, and Bud paid the taxes. In 1894, W. L.
Barbee and his wife requested Squire Moffit to prepare
a warranty deed conveying this land to Bud. The deed
was written, and it was signed by the two grantors
and acknowledged by them before Squire Moffitt.
Whether it was ever actually delivered to Bud is the
main matter in controversy, concerning which facts
will more fully appear in the opinion. The parties
admit the making of the deed, but say that it was made
in 1892. Subsequent to the making of the deed, Bud
Barbee made permanent and substantial improve-
ments on the place, remodeled the house, built corn
cribs, and otherwise improved it as a home. Whether
his father reimbursed Bud the cost of improvements
and taxes paid is in controversy.

I. We cannot undertake to set out in detail the
voluminous testimony in this case. Upon a careful
consideration of all the evidence, we are constrained
to disagree with the learned chancellor as to the weight

of the evidence. W. L. Barbee bought this land about the time Bud married, and put Bud in possession of same as his home. Subsequently the parents signed and acknowledged a warranty deed conveying this land to Bud. Squire Moffit, who wrote the deed and took their acknowledgments, testified that they told him at the time that they were giving the land to Bud and that they intended to deliver the deed to him that day on their way home. Both grantors deny that they made this statement to the justice. He is, however, a disinterested witness, and his affirmative evidence on this point should outweigh the denial of the parties, in view of their obvious interest in the case, as will appear later on. Several witnesses, apparently disinterested, testify to statements made subsequently by both the elder parties and Bud to the effect that the deed had been delivered. All three parties deny ever having made such statements, and one or two witnesses testify that Bud claimed that the land belonged to the old man. There is also testimony, not of great weight, that the deed was seen by two persons in Bud's possession. Substantial improvements were made by Bud under his direction by men employed and paid by him. There is some testimony to the effect that his father reimbursed Bud the cost of the improvements and his outlay for taxes. We are satisfied, however, from all the evidence that to a substantial degree Bud paid the cost of the improvements. Both the elder parties and Bud testify that he occupied the place as a tenant and paid rent by a division of the crops. Their evidence is vague and unsatisfactory on this point, and is but slightly corroborated. Several farm hands testify to facts indicating a division of the corn crops. It appears, however, that Bud worked the adjoining eighty acres also, and that the crops from both tracts were gathered together at his place, the corn in cribs and the hay in stacks. He worked the old man's farm on shares. The testimony

of these farm hands does not undertake to go further than to show that crops were divided, and their testimony could well be taken to refer to crops from land other than the eighty acres in controversy. Against the inferences to be drawn from the execution of the deed, the affirmative testimony of the justice as to the declared intention to immediately deliver the deed to Bud, the testimony of subsequent statements of both parties to the deed that it had been delivered, the acts of ownership by the grantee, the positive testimony that the deed was seen in Bud's possession, and the fact that the property was assessed to Bud at his father's request, the Barbees oppose flat denials but slightly corroborated.

The evidence to rebut the case made by the defendant bank—that is, the inference arising from the execution of the deed that it was delivered, the possession by Bud, and the concurrent acts of the parties indicating his ownership,—should be clear and decisive.

In Gould v. Day, 94 U. S. 405, it is said: "Delivery will be presumed, in the absence of direct evidence, from the concurrent acts of the parties recognizing a transfer of title."

In Massachusetts this is the rule: Evidence of the execution of a deed in the presence of an attesting witness is evidence from which to infer delivery. [Howe v. Howe, 99 Mass. 88; Moore v. Hazelton, 9 Allen, 102.]

In New York, this: "In cases of voluntary settlements the courts have gone great lengths in sustaining the validity of deeds, without affirmative proof of any delivery, and the earlier cases hold that a voluntary settlement fairly made is binding in equity, unless there is clear and decisive proof that the grantor never parted or intended to part with possession of the deed, and if he retains it there must be other facts

to show that it was not intended to be absolute.'' [Wallace v. Burdell, 97 N. Y. 22.]

Section 2818, Revised Statutes 1909, provides: ''Every instrument in writing, conveying or affecting real estate, which shall be acknowledged, or proved, and certified as herein prescribed, may, together with the certificates of acknowledgment or proof, and relinquishment, be read in evidence without further proof.''

We have construed this section to mean that the certificate of acknowledgment takes the place of proof that the deed was signed *and delivered;* that it is *''prima facie* evidence that the deed was duly executed, that is, that it was signed and delivered.'' [Burke v. Pence, 206 Mo. l. c. 339.] This evidence is not conclusive. It may be rebutted by proof to the contrary.

It must be conceded that the testimony of the three parties, father, mother and son, if given full credence, clearly negatives the delivery of the deed and the ownership in Bud Barbee. Both W. L. and Martha Barbee say that they kept this deed in their possession about a month, and then burned it. Mrs. Barbee says that at the time the deed was written they expected to deliver it, but were not certain about it; that they thought they ''would have it ready.'' W. L. Barbee, when asked why he had the deed made, replied, ''Well, that was our business.'' In view, however, of the acts of these witnesses, about to be detailed, and their obvious interest in the case, we must accept their testimony with great doubt as to its reliability. W. L. Barbee retained the title to this land on the records in his own name until 1896, and until his son, Bud, had got into serious trouble in both the criminal and civil courts, and was being hard pressed by creditors, all of which was known to his parents. Then W. L. Barbee conveyed this property to his wife. The stipulation in the record states that this conveyance recites a consideration of $3,500. Mrs. Barbee testi-

fies that she took this land knowing her son's troubles, and took it in payment of a note she held against her husband. She cannot tell how long she had held the note, nor does she state its amount nor what it represented. She says the payment for the land took the note and a little more. After the defendant bank had obtained judgment against Bud, Martha J. conveys this land to Bud's minor children in consideration of love and affection. Taking the testimony of all the parties together, we cannot resist the conclusion that these conveyances were made for the purpose of placing the land beyond the reach of Bud's creditors, and to confirm the original purpose of the elder Barbees to keep the property in Bud's family. Such in fact was the result of these conveyances. These facts account for the anomalous position of Bud Barbee as a witness. In order to secure this property to his children he must disclaim ownership in himself. His counsel admitted in open court that his reputation for truth was bad. He himself admitted that his record was bad. Two witnesses testified that the reputation of W. L. Barbee for truth was bad, and one (a director in the defendant bank), that the reputation of Mrs. Barbee was bad. There was no counter evidence on the question of the reputation of the Barbees. Their testimony does not ring true, and we deem it insufficient to meet the case made by the defendant bank. There is evidence pro and con as to the reputation for truth of witnesses on both sides, also evidence tending to impeach some of the testimony for the defendant. Taking the record as a whole, and making due allowance for the unsatisfactory character of some of the testimony, we must hold that the deed was delivered to Bud Barbee, and that he was owner when the defendant bought at sheriff's sale, and that the land is now the property of the defendant bank.

Our attention is called to the oft-repeated declaration of this court that in cases where the evidence is

contradictory deference should be paid to the finding of the chancellor, because he can see and hear the witnesses. We adhere to this doctrine, but find small room for its application here. The ejectment suit, referred to above, brought by the defendant bank against the Barbees involved the precise issue presented in this case. The testimony in that case was introduced in this case upon the contention of *res adjudicata*. Upon comparison, we find the substantial testimony was the same in both cases. Each side produced some additional testimony at the last trial, but the main facts appear alike in both cases. The former case was tried by the court, and a finding of facts made. That finding was in favor of the bank, and was to the effect that W. L. and Martha Barbee executed and delivered the deed to Bud Barbee to the land in question in 1894. The first trial was before a different judge. It was a straight ejectment suit to which these plaintiffs were not parties. The judgment therein is not *res adjudicata*. The fact remains, however, that there were two different conclusions upon substantially the same evidence. Both judges heard and saw the witnesses. We can perceive no reason why we should defer to the finding of one more than to that of the other, so far as the question of superior opportunity to judge of the credibility of witnesses is concerned. These observations are fully sustained by what is said by LAMM, J., in Mann v. Doerr, 222 Mo. l. c. 20.

II. What we have said disposes of this case on the merits, and it is therefore unnecessary to discuss the other propositions urged by appellant. One matter, however, should receive attention. It is suggested by respondents that the record before us does not show all the evidence given at the trial, and our attention is called to some former decisions of this court where we held that in equity cases we would not undertake to review the evidence unless the entire testimony was

preserved in the record, on the theory that the omitted testimony might be controlling and would probably sustain the judgment. The first three pages of respondents' brief contain what purports to be an additional abstract of the record, and calls attention to the fact that the bill of exceptions contains the following: "Defendants now offer in evidence the deposition of Martha J. Colton;" also, "Defendants now offer in evidence the deposition of George W. Colton;" but that said depositions are not contained in the abstract. The respondents, however, do not tell us what testimony was contained in these depositions. They were offered by the defendant bank, and, presumably, were beneficial to the defendant, if they had probative value at all. As our judgment is in favor of the defendant, we cannot see that the respondents could be in any way prejudiced by the failure to set out these depositions in the record. Respondents do not complain that these depositions, if preserved, would have any effect upon the result. Upon the facts in this case we are of the opinion that the rule contended for by respondents does not apply. We must assume that the appellant acted in good faith, and that it regarded the omitted testimony as unimportant. If respondents deemed the abstract insufficient they could file an additional abstract under Rule 11. They undertake to do this, but their said additional abstract does nothing more than call our attention to the fact that certain depositions were omitted. No motion was made to dismiss the case for want of a full abstract.

The judgment is reversed and the cause remanded, with directions to the circuit court to enter judgment for the appellant bank in accordance with the views herein expressed, and to further order and adjudge the cancellation of the deeds from W. L. Barbee to Martha J. Barbee and the deed from said Martha J. to the children of W. O. Barbee. *Kennish* and *Brown, JJ.,* concur.