HAROLD M. BAKER, O. E. BAKER, ICY L. SMITH and W. E. BAKER, Appellants, v. EVA E. BAKER, Respondent, No. 42874—251 S. W. (2d) 31.

Division Two, July 14, 1952.

Motion for Rehearing or to Transfer to Banc Overruled, September 8, 1952.

*J. B. Smoot* and *Rendlen & Rendlen* for appellant.

*Jayne & Jayne* for respondent.

BOHLING, C.—Harold M. Baker, O. E. Baker, Icy L. Smith and W. E. Baker (plaintiffs-appellants) instituted this action against Eva E. Baker (defendant-respondent) to determine title to the East 3/4ths of the NE¼ of Sec. 5, Twp. 65 north, R. 11 west, 121 acres in Scotland County, Missouri.

D. F. Baker is the common source of title. D. F. Baker and Maggie E. Baker, his wife, had five children, to wit: Icy L. Smith, O. E. Baker, O. A. Baker, W. E. Baker and G. E. Baker. Plaintiff Harold M. Baker is the sole bodily heir of O. A. Baker, who died in 1940, leaving his widow, Clora Baker, and said son surviving. The defendant is the widow of G. E. Baker, who was also known as Glen E. Baker.

Plaintiffs pleaded a title in fee as the reversioners under a warranty deed of D. [33] F. Baker and wife, dated February 28, 1920, conveying said land to their son "G. E. Baker, and his bodily heirs," subject to the use of said lands by defendant so long as she remained the widow of G. E. Baker. G. E. Baker died without bodily heirs. This deed was never recorded.

Defendant's answer contained a cross action in equity. It admitted the execution but alleged there was no delivery of the deed aforesaid during the lifetime of the grantors; that, under a voluntary division and partition of D. F. Baker's real estate by his heirs, G. E. Baker accepted as his portion the real estate described in said deed and had acquired title thereto by adverse possession; and that, in the alternative and for a cross action in equity, if said partition was ineffectual, then all the lands of which D. F. Baker died seized, specifically described in the answer, and for which he, on said February 28, 1920, executed separate deeds to his several children, descended to said children as tenants in common, and defendant, as the widow and testamentary beneficiary of G. E. Baker, succeeded to his interest therein, and prayed an equitable decree of partition setting off to her the land described in the deed to G. E. Baker and which he had occupied and improved.

Plaintiffs' reply and answer are not material here.

The main issue is whether the warranty deed to G. E. Baker was delivered. The trial court found that it, as well as other deeds executed by D. F. Baker on February 28, 1920, had not been delivered

during his lifetime, stating: "The testimony of one of the plaintiffs, Mrs. Icy L. Smith, is to that effect and it seems to be supported by the circumstances in evidence." Judgment accordingly. Plaintiffs appealed.

Plaintiffs offered and the court heard, subject to objection, the testimony of W. E. Baker and O. E. Baker, plaintiffs. They were present on the occasions here involved. Defendant says they were incompetent witnesses to the transactions between D. F. Baker and G. E. Baker under § 491.010, RSMo 1949, which disqualifies one party to the contract or cause of action as a witness when the other party is dead, citing Wren v. Sturgeon, Mo., 184 S. W. 1036, 1037[1], holding the grantee in a deed after grantor's death was incompetent to testify concerning the delivery of the deed. The Wren case does not rule the instant issue; but said § 491.010 further provides, so far as here material: "and no party to such suit or proceeding whose right of action or defense is derived to him from one who is, or if living would be, subject to the foregoing disqualification, shall be admitted to testify in his own favor * * *." The plaintiffs derive their rights, if any, from D. F. Baker, the other party to the contract, who would be disqualified as a witness by reason of the death of G. E. Baker. Messimer v. McCrary, 113 Mo. 382, 387 (I), 21 S. W. 17, 18(1); Sutorius v. Mayor, 350 Mo. 1235, 1243 [1], 170 S. W. 2d 387, 391[1], citing cases, 350 Mo. 1235, 171 S. W. 2d 69. It appears that like reasoning would apply to the testimony of Eva Baker, defendant, tending to establish the nondelivery of the deed. Her rights, if any, are derived from her husband, G. E. Baker, and the grantors in his deed are dead.

The defendant took and read in evidence the deposition of Icy L. Smith, one of the plaintiffs, who also was present on the occasions involved, and is subject to the same disqualifications as W. E. and O. E. Baker. However, the incompetency of a witness under the statute may be and is waived by the adverse party taking his deposition, whether the same be filed in court or not. Rice v. Waddill, 168 Mo. 99, 118(II), 67 S. W. 605, 609(2); P. M. Bruner Granitoid Co. v. Glencoe Lime & Cement Co., Mo. App., 187 S. W. 807, 811[2].

The voluntary calling by a party of one physician or surgeon to testify concerning the party's condition waives the privilege and incompetency under § 491.060(5), RSMo 1949, of other physicians and surgeons who treated the party at about the same time and for substantially the same illness. Epstein v. Pennsylvania R. Co., Banc., 250 Mo. 1, 23 et seq., 37, 156 S. W. 699, 705 et seq., 710, 48 L. R. A., N. S., 394, Ann. Cas. 1915A, 423; Wells v. City of Jefferson, 345 Mo. 239, 246, 132 S. W. 2d 1006, 1010[14], citing cases; Denny v. Robertson, 352 Mo. 609, 614[2], 179 S. W. [34] 2d 5, 6[2]; State v. Cochran, 356 Mo. 778, 785[3], 203 S. W. 2d 707, 711[4]; Priebe v. Crandall, Mo. App., 187 S. W. 605, 608[7].

We think like reasoning applies to the disqualification of a witness under the "Dead Man's Statute," § 491.010, supra, and such was the stated view of the court in Fowler v. Sone, Mo. App., 226 S. W. 995, 996[8]. To prevent the statutory disqualification from becoming an instrument of injustice, we have held that, if a party waives said disqualification of a witness, he waives it for all purposes—"he may not limit his waiver." In re Trautmann's Estate, 300 Mo. 314, 322, 254 S. W. 286, 288[2]; Lampe v. Franklin Am. Trs. Co., 339 Mo. 361, 372, 373, 96 S. W. 2d 710, 715[2]. The waiver should apply to all witnesses as well as to the whole of a witness' knowledge of the facts. Fowler v. Sone, supra. Defendant waived the disqualifications of the witnesses.

 Mr. and Mrs. D. F. Baker, who were then about 66 years of age, and all of their children went to the law office of J. M. Jayne in Memphis, Missouri, on February 28, 1920. There the father and mother executed five separate like warranty deeds, all dated February 28, 1920, conveying all the lands of the father. Each deed conveyed a different parcel of his lands to a named child and his or her "bodily heirs." The recited consideration was "love and affection and the sum of Two Dollars." The deed to "G. E. Baker, and his bodily heirs" conveyed the real estate described in plaintiffs' petition and contained the following provisions:

"The said parties of the first part [grantors] reserve to themselves the life use of said lands, reserving the right to use and rent the same for their own use and benefit so long as each shall live and after their deaths the complete title to vest in said second party.

"Subject however that the grantee's wife if living shall have the use of said lands as long as she shall remain his widow."

Also, on February 28, 1920, D. F. Baker and Maggie E. Baker, of the first part, and O. E. Baker, W. E. Baker and G. E. Baker, of the second part, executed a contract, so far as material here, reading:

"Witnesseth that Whereas the said parties of the first part have this day made, executed and delivered to each of the said parties of the second part a Deed to certain real estate in Scotland County, Missouri, which lands are described in said deeds and that to O. E. Baker in addition to the land I intend to give to him I have sold to him the South half of the Northwest fractional Quarter of Section 18, of Township 65, Range 11, West, at the price and sum of $60.00 per acre, and this contract is to show that he owes me for said land for which I have taken his note, and when he pays said note said land to be his free from our rights, and in case he does not pay said note before each of the said parties of the first part die, then it is to go into the estate and be divided up between my children as to share and share alike.

"[Here follow provisions with respect to 60 acres of the lands conveyed to W. E. Baker at a price of $50 an acre and substantially simi-

lar to the provisions relating to G. E. Baker in the succeeding paragraph.]

"Also I have sold to said G. E. Baker which is a part of the land conveyed to him in his deed about 21 acres of said East three fourths (3/4) of the Northeast Quarter of Section 5, Township 65, of Range 11, West, at the price and sum of $100 per acre and for which he has. given us his note and when said note is paid said land is to be his free from any control that.we may have therein, but in case he does not pay said note until after our death, it is to be paid into our estate and be divided as aforesaid."

Four copies of the contract were signed by the said parties.

The $2,100 note of Glen E. Baker mentioned in the contract was produced by defendant and introduced in evidence by plaintiffs. It is dated February 28, 1920, [35] and is payable to the order of D. F. Baker and Maggie E. Baker, "when the payees herein are dead," with 5% interest per annum from date. It carried the following endorsement: "Whereas we took from our son Glen E. Baker the within note being for the balance due on the farm we gave him by deed, which deed to be delivered to him at our death, and whereas land has decreased in value and owing to the conditions of said deed, we hereby release him from the payment of this note. Dated at Memphis, Missouri, this 16th day of December, 1927. D. F. Baker, Maggie E. Baker."

D. F. Baker died December 24, 1928, intestate. Maggie E. Baker died in 1931, intestate.

W. E. Baker and O. E. Baker each testified, among other things, to the following effect: The father, mother and all the children were present at the meeting in J. M. Jayne's office on February 28, 1920. The five separate deeds were prepared and executed by the father and mother. The contract was prepared and executed by the father and mother and by W. E. Baker, O. E. Baker and G. E. Baker, as were the notes mentioned therein. They were signed in their presence. After the contract was executed, the father delivered the deeds to the respective grantees, and copies of the contract were handed to W. E. Baker, O. E. Baker and G. E. Baker. The father gave Glen his deed. W. E. Baker took his deed home but, having no place to keep it, asked his father in 1922 to keep it in his box. He recorded it in 1940. O. E. Baker kept his deed but never recorded it. Soon after the mother's death the five children met at W. E. Baker's home and their father's box was opened. There were two deeds in the box, W. E. Baker's and Icy L. Smith's. The deeds to G. E. Baker, O. E. Baker and O. A. Baker were not in the box. They could not say whether a copy of the contract was in the box; but the separate notes given the father by W. E., O. E. and G. E. Baker were there. Glen produced his note if it were not in the box.

On October 17, 1935, Glen E. and Eva Baker borrowed $1,500 from W. E. Baker, executed their note therefor, and secured the same by a deed of trust in which they conveyed to the trustee, as security, "a life estate in and to" the real estate described in his deed.

G. E. Baker died in 1949, without any heirs of the body surviving. His will, dated September 8, 1948, gave all the property of which he died seized, "including the East three-fourths of the northeast quarter of Section 5, Township 65, Range 11 in Scotland County, Missouri, which I acquired from my father many years ago, to my wife, Eva Baker, absolutely."

Icy L. Smith was present in court but did not testify. In her deposition, taken on June 28, 1950, and read by defendant, she stated she was 74 years of age. She recalled her father and mother making a deed to her dated February 28, 1920. Following her mother's death (in 1931), she and her four brothers met at W. E. Baker's home. In answer to leading questions, she stated her father's safety box was brought out and her deed was taken out and given to her, "and the other deeds to the other children were taken out and given to the person named in them"; that was when she received her deed "and that is true as to the other children." She then saw the contracts between the father and the boys for the first time. She remembered no settlement between the heirs at that time. She thought the notes made by three of the boys were there but did not recall anything else about them, whether they had credits or not. Her memory of events was not the best. She did not know whether the land received by O. E. Baker was north or south of the road, or how many acres were involved; or whether the land was in one tract or not; or where the land O. E. Baker paid $60 an acre for was located. She did not know whether her father or her father and mother had title to the land. She first said her father and the boys had written leases, and then she "didn't know anything about the written leases." She thought her father paid for the improvements on Glen's land, but didn't know.

Eva Baker, defendant, testified as follows: She and G. E. Baker were married in 1915. The barn was built on the land in 1913, and the house in 1916. Her husband claimed to be the owner of the land ever [36] since they moved on the farm in April, 1917. He paid the taxes since 1917 and rent to his father up to his death, and then to his mother until her death. He put the improvements on the land. She first saw the deed to G. E. Baker, her husband, after the conference in 1932 following his mother's death. She had no knowledge of his possession of the deed prior to that time. She did not go through her husband's papers. She was present and heard his consultation with an attorney and his statement he did not claim under the deed. She identified D. F. Baker's signature on the deed and also the contract of February 28, 1920, and G. E. Baker's signature on the

contract of February 28, 1920. Her testimony was admitted over specific and general objections.

The great preponderance of the evidence establishes the delivery to and acceptance of the deed by G. E. Baker, and his execution of the contract and delivery of his $2,100 note to the grantors on February 28, 1920. The memory of Icy L. Smith was imperfect and her testimony lacking in detail and, at times, inconsistent. The testimony of W. E. Baker and O. E. Baker was definite and consistent, and in harmony with what the father and his attorney were attempting to accomplish. The time, planning, trouble and expense of the meeting of February 28, 1920, was unnecessary if the transactions amounted to naught. G. E. Baker, the grantee, and D. F. Baker, the grantor, acknowledged over their signatures to the contract that the deed had been "this day made, executed and delivered", that is, on February 28, 1920; and Glen gave his father his $2,100 note in connection with said transaction. The $1,500, five-year, 5% note and deed of trust of October 17, 1935, of G. E. Baker and defendant conveying "a life estate in and to" the land described, given after he admittedly had possession of the deed of February 28, 1920, are consistent with the delivery and acceptance of said deed. It is possible, as defendant argues, that if Glen owned the fee he could secure the note by a lesser estate in the land; but it is not likely that a creditor seeking security to protect a loan not due for five years would accept the uncertain duration of a life estate when the debtor giving the security held the fee title. Other testimony tended to establish the delivery of the deed. The endorsement of December 16, 1927, on G. E. Baker's note, "which deed to be delivered to him at our death," does not defeat the delivery on February 28, 1920, of the deed. The endorsement also stated the grantees had taken the note "for the balance due on the farm we gave him by deed." The testimony of defendant that she never saw the deed until 1932, and self-serving hearsay statements that her husband did not claim under the deed, and the statement in his will "which I acquired from my father many years ago," if admissible on the issue, would not destroy the effect of a prior delivery of the deed. The statement in his will is equivocal. He does not say he inherited the land from his father or acquired it from his father's estate. We think G. E. Baker could have enforced the transaction against the grantors had a controversy arisen during their lifetime, and he and those claiming under him are likewise bound. There is no substantive evidence of any attempted partition.

We are also of the opinion that the result is the same if we disregard the testimony of W. E. Baker and O. E. Baker. The deeds, the contract and the notes of February 28, 1920, and the note and deed of trust of October 17, 1935, and G. E. Baker's will are established independent of their testimony, and what has been said heretofore with respect to said instruments is applicable here. Defendant testified

that her husband claimed to own the land from 1917 on, paid the taxes thereon and rent, first, to his father and then to his mother until her death. If he claimed the land in fee from 1917 on, he should have asserted his claim on February 28, 1920, if at variance with the deed to him, and should not have executed and delivered his contract and $2,100 note to his father. If he did not receive the land until the claimed partition of the inheritance of his father's lands there was no occasion for his paying the taxes on the land, in addition to rent, while his [37] father held the complete title. The land was not part of the messuages or plantation belonging to the father's mansion house. His payment of rent to the mother after his father's death was in recognition of the life estate reserved to the mother in the deed of February 28, 1920.

Section 490.410, RSMo 1949, provides that deeds, when acknowledged, "may, together with the certificates of acknowledgment * * * , be read in evidence, without further proof." The deed of February 28, 1920, to G. E. Baker was regular on its face and was duly acknowledged. It was thirty years old before questioned in court. "We have construed this section to mean that the certificate of acknowledgment takes the place of proof that the deed was signed *and delivered; that it is 'prima facie evidence that the deed was duly executed, that is, that it was signed and delivered.'"* Barbee v. Farmers' Bk. of Polo, 240 Mo. 297, 306, 144 S. W. 839, 841[1]; Keener v. Williams, 307 Mo. 682, 271 S. W. 489, 494[1], citing cases; Wilcox v. Coons, 359 Mo. 52, 220 S. W. 2d 15, 19[5-7].

The fact that the deed reserved a life estate for each of the grantors raises a strong presumption that D. F. Baker intended the title should immediately vest in the grantee; otherwise there would be no reason for the reservation in or the execution of the deed, which would not function as a will. Sneathen v. Sneathen, 104 Mo. 201, 209, 210, 16 S. W. 497, 499, 24 Am. St. R. 326, Breshears v. Breshears, 360 Mo. 1057, 232 S. W. 2d 460, 462[2].

The deed was shown to have been in the possession of Glen E. Baker, the grantee, and a presumption of delivery arises from the grantee's possession of the deed. Zumwalt v. Forbis, 349 Mo. 752, 163 S. W. 2d 574, 575[3, 4]; Koewing v. Greene County Bldg. & L. Ass'n, 327 Mo. 680, 38 S. W. 2d 40, 42[2]; Aude v. Aude, Mo., 28 S. W. 2d 665, 668[3-5].

D. F. Baker was making a voluntary settlement of his lands upon his children and, in connection therewith, took notes from some that each might share equally in his property. In such circumstances the presumption of the delivery of the deed is stronger than in cases of bargain and sale. " 'To make delivery of a deed, it is not necessary it should actually be handed over to the grantee, or to another person for him. It may be effected by words without acts or * * * by both acts and words. Indeed, it may be made though the deed re-

328

mains in the custody of the grantor.' '' Mason v. Mason, Mo., 231 S. W. 971, 972[3]; Crowder v. Searcy, 103 Mo. 97, 117, 118, 15 S. W. 346, 352; Schooler v. Schooler, 258 Mo. 83, 92, 167 S. W. 444, 446[3]; Galloway v. Galloway, Mo., 169 S. W. 2d 883, 888.

G. E. Baker died without any bodily heirs and the grant to "G. E. Baker and his bodily heirs" fell in for want of any taker upon his death. Mattingly v. Washburn, 355 Mo. 471, 196 S. W. 2d 624, 626[1], citing cases; Gillilan v. Gillilan, 278 Mo. 99, 116(IV), 212 S. W. 348, 351(IV). However, the reversion remained in the grantor, D. F. Baker, and upon his death intestate descended to his five children (all survived him) in equal parts. § 468.010, RSMo 1949. His widow did not elect to take a child's part, nor could she under the deeds. The reversion vesting in G. E. Baker passed under his will to Eva Baker, his widow, defendant. Defendant, in addition to her rights under the deed to G. E. Baker, has an undivided one-fifth interest in the fee of the lands therein described. Davidson v. Davidson, 350 Mo. 639, 646, 167 S. W. 2d 641, 644[12]; Lankford v. Lankford, 348 Mo. 1170, 159 S. W. 2d 264, 266[1]; Davis v. Austin, 348 Mo. 1094, 156 S. W. 2d 903, 905[5]; Lewis v. Lewis, 345 Mo. 816, 136 S. W. 2d 66, 71, 72, and cases cited.

Accordingly, the judgment is reversed and the cause is remanded with directions to enter judgment in conformity hereto as between the litigants. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.