Clifford CARTMILL, Individually and as
Executor of the Estate of Clifford J.
Bosley, Deceased, Appellant,

v.

Nina Clifton EVANS, Respondent.

No. 56818.

Supreme Court of Missouri,
Division No. 2.

Sept. 10, 1973.

Herbert S. Brown, Trenton, for appellant.

Thomas J. Layson, Trenton, for respondent.

FRANK E. MEYER, Special Judge.

Clifford Cartmill, individually and as executor of the Estate of Clifford J. Bosley, deceased, brought this suit to set aside a deed executed by his testator on October 12, 1965, whereby he conveyed a small dwelling house and land in the town of Spickard, Missouri to Nina Clifton Evans. The trial court refused to set aside the deed, and the executor in his individual and representative capacity has appealed. At the time the notice of appeal was filed on April 22, 1971, this court had appellate jurisdiction because title to real estate was involved, and it retains jurisdiction pursuant to Mo.Const. Art. V, § 31, V.A.M.S.

The decedent, Clifford J. Bosley (hereinafter called the decedent) was an elderly

person, who lived and resided in the little town of Spickard, Grundy County, Missouri, population 450. He was a widower at the time of his death on January 13, 1969, with his wife Iceloana, preceding him in death on April 26, 1960. The decedent and his wife had no children born of their marriage; and prior to moving into town, they had lived on a farm northeast of town. Clifford Cartmill, the plaintiff herein in the lower court and the appellant before this court, was reared by Mr. and Mrs. Bosley and lived and worked with them on the 500 acre farm until he married in 1938 and for a period of approximately two years. The latter two years the decedent and the plaintiff operated the farm as partners. Thereafter, plaintiff moved from the Bosley farm and engaged in separate farming operations on his own and plaintiff moved to Kansas City, Missouri in 1965 where he continued to reside and was employed in the United States Post Office.

Nina Clifton Evans, hereinafter called the defendant, was the sister of the decedent and she is a widow with all her children grown and residing away from home. She was the grantee of the deed in question and is the respondent herein. Defendant was not permitted to testify in this cause by reason of § 491.010, RSMo 1969, V.A.M.S., (the Dead Man's Statute).

It is undisputed in this case that the decedent went to the defendant at the time of his wife's illness in March of 1960 and asked the defendant to come to his home and take care of Mrs. Bosley. The defendant gave up her job of nursing the mother of Earl Barnes and moved into the Bosley home to take care of the seriously ill wife of the decedent. After the death of Mrs. Bosley, decedent requested the defendant to continue to reside in the home to take care of him and keep house and cook for him as he could not even "boil water". This continued until his death on January 13, 1969.

On May 10, 1960, decedent made and executed his will under which plaintiff is serving as executor. The will, particularly Articles II and III thereof, directed that his estate should be divided equally between plaintiff and defendant, after payment of debts and expenses.

The only property owned by the decedent at the time of his death, exclusive of the small dwelling house, was a small bank account in the People's State Bank of Spickard in joint names of decedent and defendant (made joint on May 27, 1968, balance $1356.28) and a small insurance policy for $1100 of which defendant was the named beneficiary, Social Security Death Benefits of approximately $250 and the household goods. It is clear from the record in this case that defendant, after paying medical expenses and funeral expenses of decedent's last illness, gave half of all personal property to the plaintiff.

The ownership of the small dwelling is the sole item of dispute before this court.

The circumstances surrounding the execution of the deed from decedent to defendant on October 12, 1965, and the subsequent relevant acts of the parties are as follows:

It is undisputed that the deed was not recorded until after the decedent's death on January 13, 1969—i.e., January 16, 1969.

Decedent went on October 12, 1965, to the offices of G. E. Tracy at the People's State Bank in Spickard. Mr. Tracy was a vice-president of that bank and also operated an insurance agency. Mr. Tracy prepared the deed at Mr. Bosley's request at his insurance office and Mr. Bosley took it with him saying to Tracy "he was going to take it and give it to Nina, but he didn't want people to know it right then." Tracy testified that he and Bosley had been friends for many years and that Tracy's father-in-law lived next door to decedent and that for six months prior to making this deed, the decedent-grantor had told him that he wanted to deed the house to Nina because she had been good to him since his wife died.

Tracy also testified that he was agent for the company which carried the fire insurance on the Bosley house and contents from 1961 when he bought the place until 1970 when he died. All during this period the policies and their renewals showed the named insured as C. J. Bosley and particularly the renewal policy issued on 11–18–67 to 11–18–70. The dwelling was insured for $6,000 and the contents for $2,400. Mr. Bosley paid the annual renewal premium in November 1965, 1966, 1967, and 1968 by check delivered to Tracy in person. Mr. Tracy stated his opinion that the house in January, 1969, had a fair value of $5,000 to $6,000. Tracy was never asked to change the named insured on the policy until after decedent's death when the policy was put in defendant's name. The draftor of the deed was unable to state of his own knowledge whether or not the deed was delivered to Mrs. Evans.

The plaintiff produced other witnesses to establish that the decedent paid taxes (real and personal for years 1966, 1967, and 1968) without changing ownership on assessment records. Various assessors testified for plaintiff. Water bills for 1967, 1968, and until January 13, 1969, were listed in name of Clifford J. Bosley and Mrs. Evans paid them after that date and had the record changed to her name three months before trial of January 13, 1971.

The principal witness for plaintiff was Mrs. Thelma Cartmill, wife of plaintiff. She testified that prior to decedent's death, she had seen the box in which he kept his personal papers on several occasions and that he always kept that box in his bedroom which was located on the first floor of the home in Spickard. (It is undisputed that defendant usually occupied a bedroom on the second floor of that home and evidence was presented that during decedent's final hospital stay during the colder days in January, 1969, the defendant used the bedroom on the first floor.)

It is also undisputed that the day after the decedent's death, the family gathered at the home after making the funeral arrangements. At that time Harry Clifton, son of defendant, brought a square tin black box out of the first floor bedroom which Mrs. Cartmill identified as the box in which the decedent kept his personal papers. Harry Clifton produced from that box the will executed by decedent on May 10, 1960, and the deed to the defendant executed by decedent on October 12, 1965. Mrs. Cartmill testified that the deed was in a box she had seen decedent use for a number of years which might have been a "family box" and to her knowledge the defendant never had possession of the deed.

The deed was recorded after the decedent's funeral and plaintiff admitted receiving from defendant thereafter one half of the money decedent had on hand when he died after payment of hospital and funeral expenses. Mrs. Cartmill testified that both decedent and defendant could have had similar tin boxes. Mrs. Cartmill testified again as a rebuttal witness to the effect that the black tin box identified by her as belonging to decedent, appeared to be the same one she had seen in possession of decedent's wife before her death while living with the Bosleys at their farm. Mrs. Cartmill admitted under cross-examination that all such boxes are similar in appearance and that she thought the box had been in the family for a long time.

After this judgment was entered in the trial court and while the cause was pending upon motion to amend the judgment, the parties agreed that the household goods and personal property of the decedent were owned by plaintiff and defendant equally as tenants in common and that said stipulation was not to be considered as evidence to prejudice the rights of either plaintiff or defendant. The only remaining asset in the dispute is the home in Spickard.

Upon this evidence plaintiff contends that the deed was in the possession of the decedent-grantor at the time of his death and therefore was invalid for lack of delivery to grantee-defendant; that grantor

never had the intention that the deed was to confer an interest in grantee in the real estate during decedent's lifetime and supports this contention by alleged continued physical control of the property by decedent after execution of the deed in 1965 and continuing to pay taxes upon it and keep assessment records in his name. Plaintiff makes the further contention that the decedent evidenced this intention by failing to revoke or destroy his written will of 1960, when he allegedly had disposed of all his assets.

Defendant produced eleven witnesses in her own behalf and also cross-examined plaintiff's eight witnesses extensively.

The substance of that evidence can be fairly shown to be as follows:

They were all personally acquainted with decedent and defendant and knew that decedent was deeply grateful to defendant for taking care of him and the house for nine years and that he had stated to them on numerous occasions that he wanted her to "have the home." One of plaintiff's own witnesses, Mr. Coon, testified specifically that the decedent had stated to him "that he had made a deed to Nina (defendant); that he had given the deed to her," "that he had delivered it to her." Similar statements were made by decedent to defendant's witnesses, Barnes, Roberts, Mrs. Brewer, Cecil Bruce, Kenneth H. Bosley (no relation to grantor), John Earl Keigh, and defendant's sons, Rev. Harry W. Clifton, Robert Clifton, and William Clifton.

The box in which the deed was found was identified as being owned by defendant by several of these witnesses; i.e., Mrs. Brewer, Harry W. Clifton, Robert Clifton, William W. Clifton. Defendant also produced evidence that decedent maintained a safety deposit box at the bank for years which he had given up before his death and that he kept his papers in an old shoe box on the bathroom shelf thereafter; and that he owned no tin black box.

Mr. Kenneth Bosley was no relation of decedent but he and decedent were close friends. He testified he was at the decedent's home the same winter he died, when decedent wanted to show him the deed involved in this case. Decedent asked defendant to "get your box, I want to show Kenneth something." Nina went and brought a black tin box which she unlocked in his presence and handed to the witness the deed. He gave it back to defendant and she put it back in the box.

Defendant's principal witness concerning the location of the deed and the will and the ownership of the black tin box was the oldest son of defendant, Rev. Harry W. Clifton. He testified positively that the black tin box in which the deed was found, was owned by defendant and that she took the box with her, keeping it in her bedroom even when visiting elsewhere. That the defendant was using the downstairs bedroom while decedent was in the hospital. He was present when the defendant removed the will from decedent's shoe box and placed it in the tin box on the day following decedent's death, before Mr. and Mrs. Cartmill arrived at the home. This witness was also present when the defendant unlocked the box to produce the deed and will on that date.

Mrs. Brewer testified decedent had told her that he had asked the defendant not to record the deed until after his death to avoid "any hurt feelings" of others in or close to the family. This was corroborated by other witnesses.

Witness John Earl Keith testified the decedent had asked him "how it could be handled so Nina would have the property when he was gone", with the knowledge that Mr. Keith's grandfather had been a lawyer who had arranged disposition of property in this manner. Keith explained to him what to do and later on, decedent stated to him that he had completed the steps he suggested, but the witness never saw the deed in defendant's physical possession at that time.

We have set forth rather fully the facts of this case upon which the trial chancellor

made his findings of fact and conclusions of law. That court found "that the deed was duly executed and delivered for valuable consideration to Nina Clifton Evans, and the petition to set aside is found against plaintiffs and the petition is hereby dismissed."

■ On this appeal from a decree in equity it is our duty to review the evidence, determine its weight and sufficiency, and make our own findings, giving due deference to the finding and judgment of the trial chancellor. Cleary v. Cleary, 273 S.W.2d 340, 346 (Mo.1954); Klatt v. Wolff, 173 S.W.2d 933 (Mo.1943).

The only question for us to determine is whether there was a delivery of the deed (evidence here clearly establishes that the deed was given for good consideration: i. e., nine years' service without any compensation).

■ The controlling principle is set forth in Shroyer v. Shroyer, 425 S.W.2d 214, 219 [2] (Mo.1968):

"The controlling element in determining this question, a mixed question of law and fact, is the intention of the parties, particularly the intention of the grantor. O'Mohundro v. Mattingly, Mo.Sup., 353 S.W.2d 786 [2]; Klatt v. Wolff, supra; Galloway v. Galloway, Mo.Sup., 169 S.W.2d 883 [13]. The vital inquiry with respect to the grantor is whether she intended a complete transfer; whether she parted with dominion over the instrument with the intention of relinquishing all dominion and control over the conveyance and of making it presently effective and operative as a conveyance of the title to the land. [citing cases] * * * It is all a question of the intention of the parties, which may be manifested by words or acts or both. Cleary v. Cleary, supra, 273 S.W.2d, l.c. 346."

■ The burden of proof of nondelivery of a deed is upon the party who seeks to invalidate the conveyance on the ground of nondelivery. Shroyer v. Shroyer, supra, l.c. 220; Wilkie v. Elmore, 395 S.W.2d 168 (Mo.1965), O'Mohundro v. Mattingly, 353 S.W.2d 786, 792 [1] (Mo.1962). In this case plaintiff has the burden of proof of nondelivery.

■ If the deed is found in the possession of the grantor at the time of death unless explained, nondelivery is presumed. Phillips v. Phillips, 50 Mo. 603, 606 (1872).

■ If the deed is found in the possession of the grantee, the presumption of delivery arises. Baker v. Baker, 363 Mo. 318, 251 S.W.2d 31, 37 [1], 33 A.L.R.2d 1431 (Mo.1952), and authorities cited therein.

In this case the issue in whose possession the deed was found, was the principal issue the trial judge was called upon to determine. He found the deed was in the possession of the grantee at the time of decedent's death. In making this determination, the chancellor heard and observed the demeanor of nineteen witnesses and was in a far better position to judge their credibility and reliability than are we.

In reviewing the evidence in this case, we are aware of the fact that the determination of the factual question in whose possession the deed was found at the time of death, depends to a large degree upon the credibility of plaintiff's principal witness, Thelma Cartmill, wife of plaintiff, and defendant's principal witnesses, Harry W. Clifton, son of defendant, and Kenneth H. Bosley.

■ We find, and concur in the findings of the trial chancellor, that the deed was in fact in the possession of the defendant-grantee at the time of death and that the presumption of delivery must be afforded to the defendant. We further find and conclude that delivery of the deed by grantor to grantee was made with the intention to make a complete transfer to

the grantee of a present interest in the land.

The Shroyer case, supra, is to be distinguished from this case in several respects. We note the same trial chancellor heard that case initially and he correctly applied the governing principles hereinbefore set forth to the facts of that case. In the Shroyer case, the deed was found to be in the undisputed possession of the grantor in her strong-box left with neighbors, and grantees had no access to that deed or box and plaintiff was entitled to the presumption of nondelivery. Id., 425 S.W.2d 1.c. 220 [12]. The grantee in that case failed to sustain her burden of rebutting plaintiff's prima facie case of nondelivery. Here the preponderance of the evidence shows the deed was in the possession of the grantee-defendant and plaintiff has failed to sustain his burden of proof of nondelivery. The acts and words of grantor clearly show that delivery was made to the grantee in 1965 and the deed was never out of the possession of the grantee at any time and was in her possession at the time of the grantor's death.

It is true the deed itself did not reserve a life estate to the grantor herein. Such a reservation would have more clearly raised a stronger presumption here that he intended that title should immediately vest in the grantee, Baker v. Baker, supra, 251 S. W.2d 1.c. 37; Shroyer v. Shroyer, supra, 425 S.W.2d 1.c. 221. However, the acts and statements of the grantor here show that many of the expenses to run the house (including food) and funds to pay insurance and taxes, came from joint funds to which defendant contributed from her social security checks. The grantor did not have any keys for the black tin box of the grantee and he was not shown to have any access to that box, which at all times contained the deed. Fairly considered, the grantor in Shroyer had at all times until her death the right to change her mind and destroy the deed. In this case, the deed was placed beyond the grantor's control in a place where he was not shown to have access.

This case is distinguishable from Shroyer regarding the reason for not recording the deed during the lifetime of grantor. The failure to record in this case was consistent with grantor's announced desire to "avoid hurt feelings within the family." In Shroyer such failure to record was consistent with grantor's desire to keep control of the deed and to be able to destroy it if she later desired to change her mind, which she was prone to do.

In this case, possession of the home was joint at all times after execution of the deed but in Shroyer, possession was solely in the grantor who retained all revenue from the farm. The grantees in Shroyer didn't seem to know about the deed until after the grantor's death and by their conduct showed such lack of knowledge.

In this case, the grantee brought out the deed the very next day after grantor's death and exhibited same to plaintiff and all other possible heirs.

We conclude that the Shroyer case, supra, and the other cases cited to this court by the appellant are not controlling herein for the reasons and grounds set forth.

We find that evidence of payment of real and personal taxes by grantor for years of 1965, 1966, 1967, and 1968, and payment of utility bills by grantor for that period, and allowing his name to be carried on assessor's records for that period, is not sufficient to sustain plaintiff's burden of rebutting defendant-grantee's prima facie case of delivery of the deed, and that plaintiff has failed to sustain his burden of proof.

Based upon our review of the evidence, and upon our consideration of all the attending words and acts of the grantor concerning the execution and delivery by Clifford J. Bosley of the deed to defendant-respondent, we hold as did the trial chancel-

lor, that appellant failed to sustain this burden of proof.

The judgment is affirmed.

HENLEY, P. J., and DONNELLY, C. J., concur.

MORGAN, J., not sitting.

FINCH, J., not a member of Division when cause was submitted.