P. L. EDWARDS, Executor of the Estate of Ida Mae Mensendieck, Deceased, Respondent,

v.

Robert L. DURHAM and Mensendieck Grain Company, a Corporation, Appellants.

No. 48108.

Supreme Court of Missouri,

Division No. 1.

May 8, 1961.

William B. Springer, Nick C. Spanos, Roger T. Hurwitz, Kansas City, for appellants.

Jack Z. Krigel, Kansas City, for respondent.

DALTON, Judge.

Action in two counts for money had and received. The cause was tried to the court without the aid of a jury. The court found the issues for plaintiff and entered judgment against defendants for $18,985.83. Defendants have appealed.

The action was instituted by P. L. Edwards, Executor of the Estate of Ida Mae Mensendieck, deceased, against Robert L. Durham and Mensendieck Grain Company, a corporation. The petition stated that defendants on November 9, 1953, received $10,000 from Mrs. Minnie N. MacLean and $5,000 from Mrs. Ida Mae Mensendieck; that Mrs. MacLean died January 15, 1954; and Mrs. Mensendieck, her sister, died on December 5, 1955; that P. L. Edwards had been appointed executor under the will of each; that Mrs. MacLean devised and bequeathed her claim against defendants to her sister Mrs. Mensendieck; that the said claim had been delivered and.

distributed to the estate of Mrs. Mensendieck; that the latter estate was now the owner of both claims; and that plaintiff, as executor of Mrs. MacLean's estate, had demanded payment of the $10,000 on April 9, 1954. Demand for payment of the $5,000 claim was made by the filing of this action on August 8, 1957.

The parties stipulated that under the MacLean will her interest in the alleged claim was in the Mensendieck estate. It was also admitted that, prior to November 9, 1953, defendant Durham had purchased 994 shares in the Mensendieck Grain Company from Mrs. MacLean and Mrs. Mensendieck and the "rest of it from other people," so that he was "principal stockholder * * * except for qualifying shares," and that "he was president and chief officer of the Mensendieck Grain Company." He had been connected with the operation of the Mensendieck Grain Company for many years, and, after the mentioned purchase of stock and a $100,000 down payment, installment payments on the balance of the purchase price were made to the sellers or their estates for a number of years.

Certain essential facts are not in dispute, as appears from the testimony of defendant Durham, a witness on behalf of defendants. He testified that, on a date subsequent to October 23, 1953, he had a conference with Mrs. MacLean and Mrs. Mensendieck and, on the following day, Mrs. MacLean went with him to the First National Bank in Kansas City and delivered to him $15,000 in cashier's checks; and that these checks were deposited to the credit of the Mensendieck Grain Company. Photostatic copies of the mentioned checks were in evidence, $10,000 from Mrs. MacLean and $5,000 from Mrs. Mensendieck, as follows: One cashier's check for $5,000 payable to Mrs. W. J. Mensendieck, endorsed on the back by Mrs. Mensendieck and endorsed by the Mensendieck Grain Company and deposited in its account in the Commerce Trust Company. Each endorsement was in blank and they appeared in the mentioned order. Nine cashier's checks for $1,000 each and one for $1,000.02, each payable to Minnie N. MacLean and endorsed in blank by her and by the Mensendieck Grain Company, and all had been deposited in the Company's account in the Commerce Trust Company. These several cashier's checks had been issued on various dates by either the Commercial National Bank of Kansas City, Kansas, or the Baltimore Bank, Kansas City, Missouri. All checks were deposited on November 9, 1953.

On behalf of plaintiff, Zonie Glover testified that she had worked as a maid in the home of Mrs. Mensendieck and Mrs. MacLean (widows and sisters residing together) from 1945 through 1953; that about the first part of November, 1953, one morning about 8 a. m., while she and Mrs. Mensendieck and Mrs. MacLean were having breakfast in the breakfast room at the Mensendieck home, Mr. Robert L. Durham came to the house and was admitted and came to the breakfast room. After some preliminary conversation, he told the two sisters that he wanted to borrow $15,000 "to stay in business." She further testified: "Well, they told him that they didn't have the money at the time, and they talked the matter over and all, and they asked him, 'Well, couldn't you get this money from the bank to loan it to you?' or something, some other place. And he says no. And so they went on further with the conversation, talking about it, and so—they didn't give him any answer right then, they had to get together themselves in order that they would talk the matter over. * * * they wasn't ready right then to let him have it, and they said they would think over it, you know, in order that they would let him have it, you know, to see about it, that is if he couldn't get it from the bank or somewheres else. * * * They finished their breakfast at that time and then Mr. Durham leave the house and goes away."

The second visit and conversation was at breakfast time in the breakfast room and only Mrs. Glover, the two sisters and

defendant Durham were present. They offered him breakfast, but he refused and said he had had breakfast. Mrs. Glover further testified: "Yes, he came back, to my recall, a few mornings later, and he was asking them about the money, and they had a consent that they would let him have the money, you know, and everything, and so they told him that they was expecting to get repaid back for this money sometime in the near future. So, after that, the conversation went on through until—I can't recall just what—when he come, but later he, you know, they got the money ready so they would let him have it, and I didn't hear anything concerning the money about a gift." The matter of interest was not discussed. "It was a loan to be repaid sometime in the future. * * * Well, to my recollection, it would have been later on in the fall of the year. You know, they goes away to Florida, and it was going to be when she comes back later on for the winter sometime."

Mrs. Glover further testified: "Yes, I know they wasn't going to loan it unlessen they got interest on it, that is for sure. They didn't loan it to any body unlessen they got interest on it. * * * Well, they told him that they was expecting to get paid back, now, they was going to loan it to him." Mrs. MacLean said, "We expect to get paid back." As to Mrs. Mensendieck, the witness said: "She just bear witness to that that they were looking for to get paid back." As to the time of the second visit the witness said: "It was in November. * * * I can't recall, you know, what time. It was during that month of November. Whether it was—well, it was just before they were getting ready to go, you know, away to Florida." On each visit Mr. Durham stayed something like an hour. When he came the second time, "They had agreed to let him have it. * * * I don't recall just what particular day they would get together * * * He didn't tell them and they didn't tell him exactly how long it would take. * * * Later, they didn't state how they had given him the money."

She further testified: "Yes, I heard them tell they had given him the money because, you know, after the second day he was there and got the money, they made mention that 'We had to let Mr. Durham have that money and now we can be at ease a while,' you know, because he was wanting the money and you know he wouldn't, you know, wasn't satisfied until they agreed that he could get it." Mr. Durham was a friend of the family; he had been seen there quite often, but only at breakfast time on the two occasions mentioned. He stopped by more often in the afternoons.

Plaintiff Edwards testified that he had had two conversations with defendant Durham. The first conversation was in early March, 1954, and the second in April of that year. As to the first conversation, plaintiff testified: "I called Mr. Durham up on the telephone, talked to him about several matters that have nothing to do with this, and then called his attention to the fact that I had listed in the inventory, the two inventories, the claim of $10,000 as money that he received from Mrs. MacLean and $5,000 monies that he had received from Mrs. Mensendieck, and I said to him, 'Mr. Durham, I wonder if you could give me any idea as to when you could pay it or arrange to pay it?' And he says, 'Well, I didn't borrow that money.' He said, 'Some third party borrowed it.' And, well, I asked him who the third party was, he said, 'Well, I don't care to discuss it any further.' And that is about all that was said between Mr. Durham and me at that time. He refused to discuss—give me any more information and that is all he said at that time. That was in March of '54." As to the April, 1954 conversation, plaintiff testified: "I called him and again asked him about this indebtedness, this $15,000, and he said to me this: He said, 'Now, that loan was a secret between Mrs. Mensendieck, Mrs. MacLean and myself.' And he said, 'We agreed to keep it a secret and I am not going to discuss it with you.' Well, I said, 'Mr. Durham, Mrs. MacLean is dead. I am her executor. If

you have any secrets, if there was anything secret between you and Mrs. MacLean regarding this loan, I think you should discuss it with me now because I am her executor.' 'No,' he says, 'That loan was a secret between the three of us and I am not going to discuss it with you.' * * * Subsequent to that, I wrote a letter demanding [payment]. * * * I have a copy of it here. It 'was on April 9, 1954." The letter of April 9, 1954 (Exhibit 12) was admitted in evidence only for the purpose of showing that there was "a written demand by way of a letter" on that date. Witness Edwards further testified that no part of the $15,000 had been paid.

■ Before reviewing defendants' evidence we will dispose of one of appellants' assignments of error. The first assignment under Points and Authorities is that, the court erred in making finding of fact number 5 and conclusion of law number 1, because said finding of fact was based in part upon evidence which had been excluded by the court at the trial. Finding of fact number 5 included a finding in conformity with plaintiff's testimony concerning his conversations with defendant Durham and, also, a further finding that on April 29, 1954, defendant Durham wrote a letter (Plaintiff's Exhibit 13) to Mrs. Mensendieck, in which he contended the transaction was a secret between the sisters and him, as contained in the third paragraph of said letter as follows: "Ida, in regard to some help you gave me, I have been anxiously awaiting for you to come home because you and Min asked me to talk of it to no one because it was not to be anyone else's business. So I have been hoping that you would be home before long, so we can talk things over."

The transcript of the record presented on appeal shows that, after Plaintiff's Exhibit 12 was admitted for the sole purpose of showing a written demand for payment, the plaintiff identified the signature on Plaintiff's Exhibit 13, a letter dated April 29, 1954, as that of defendant Durham. No evidence was offered that Exhibit 13 was in reply to Exhibit 12, and it was objected to by defendant on the theory that "it has no reference to the $15,000 in suit here." After reading the letter, the court said: "The only thing it seems to refer to is, 'the help you gave me', doesn't designate any particular—nothing directly in reference to this matter. I am going to sustain the objection."

Thereafter, when defendant Durham testified, he was cross-examined as follows:

"Q. (By Mr. Krigel) Now, shortly after receiving Plaintiff's Exhibit 12, dated April 9, 1954, which your counsel has conceded, I am going to ask you whether or not you wrote this letter numbered Plaintiff's Exhibit 13, dated April 29, 1954, is that your signature? * * * A. Yes.

"Q. (By Mr. Krigel) Let your counsel read it.

"Mr. Spanos: This has already been introduced in evidence.

"Mr. Krigel: That is correct. Does Your Honor recall this Plaintiff's Exhibit 13, a letter from Bob Durham to Ida in which the paragraph, 'Ida, in regard to some help you gave me, I have been anxiously waiting for you to come home because you and Min asked me not to talk of it because it was not to be anyone else's business, so I have been hoping that you would be home before too long so we could talk things over.' That is the letter—

"The Court: April 29th.

"Mr. Krigel: April 29, 1954, * * *

"The Court: What is the date of Mr. Edwards' letter?

"Mr. Krigel: April 9, 1954, Judge, Plaintiff's Exhibit 12.

"Mr. Spanos: There are no further questions, Mr. Durham, so you can read that down here * * *."

The record, therefore, shows that after defendant Durham admitted his signature and after the attorneys for both parties had told the court that the letter had already been introduced in evidence, it was read into the record and became a part of the record without objection. We find no merit in appellants' further argument that the action of the court in including the letter in its findings of fact denied defendants the right to bring forward proper rebutting testimony. Defendants called three additional witnesses after Exhibit 13 was read into the record. Defendants were not at any time denied the privilege of presenting rebuttal evidence, if any was available to them. The fact that the letter had once been excluded from evidence did not bar its admission subsequently. We must and do hold that the letter became and was a part of the record evidence in the case. The record indicates that the court properly considered the letter as in evidence at that time. The assignment is overruled.

Defendants' defense theory was that in 1953, the two sisters, Mrs. MacLean and Mrs. Mensendieck, gave the $15,000 in question to the Mensendieck Grain Company. In support of this theory defendants' evidence tended to show that in 1951 each of the sisters had made a will giving their shares of stock in the Mensendieck Grain Company to defendant Durham, if the other sister had predeceased her; that, thereafter, while both sisters were alive, defendant Durham undertook to buy all of their shares of stock from them; that a contract was entered into with them on October 6, 1953 and a further contract on October 16, 1953, while defendant Durham was vice-president, assistant secretary and treasurer of the Corporation. The difference between these contracts was that the first provided that a certain $15,000 Winningham note held by the Corporation, which was in fact worthless, might be applied in part payment of the purchase price of the stock. This provision was eliminated from the second contract. After the second contract was entered into and after certain partial payments had been made on the purchase price and, after defendant Durham became president of the defendant Corporation and a member of the Kansas City Board of Trade, he filed an application with the Board of Trade to represent the Mensendieck Grain Company as its president. Accordingly, he submitted a financial statement as to the assets of the defendant Corporation. Thereafter, he was notified that the liquid assets of the Corporation were insufficient for him to qualify. He then went out and had a conference with Mrs. Mensendieck and Mrs. MacLean. No one else was present. He had known Mrs. Mensendieck for many years. He had been with the grain company in many capacities since 1930. Mrs. MacLean had also worked in the office of the grain company and he knew her well. On the day after this conference, Mrs. MacLean went with him to the First National Bank and delivered to him the $15,000 in cashier's checks and he deposited these checks in the Mensendieck Grain Company account. He was, thereafter, able to qualify and do business on the Board of Trade. The Winningham note, above referred to, was then taken off the books of the Corporation. Defendant Durham testified that he did not sign any note or other documentary paper either for himself or for the Mensendieck Grain Company indicating that the receipt of the $15,000 was a loan and not a gift or that it was intended as restitution of a part of the purchase price. The only note he had ever signed was the one for the balance due for the corporate stock, when he acquired it.

Defendant Durham further testified that during the week of November 2, 1953, he was in the grain business; that he was at his office "Usually by 8:00 o'clock" for the purpose of transacting "any business before the opening of the futures market which was 9:30"; that during the week of November 2, 1953, he did not go to the home of Mrs. Mensendieck while they were having breakfast; that he was never in her home while she and Mrs. MacLean were having breakfast, or while Mrs. Glover was

eating with them; that he did have two telephone conversations with plaintiff Edwards, one in March and one in April 1954, or around that time; that Mr. Edwards telephoned him; that Edwards did not claim he, Durham, was indebted to either of the two estates, until after some difficulty had occurred at a meeting of certain parties in plaintiff's office in February, 1954; that when Mr. Edwards telephoned him, he told Edwards: "I didn't owe anybody any money"; and that he didn't say some third party had borrowed the $15,000 or that the $15,000 was a loan and a secret, or was "a secret between the three of us."

Mrs. Pearl Samuelson, a grain clerk, who worked for defendant Durham, testified for defendants that each morning during the week of November 2, 1953, she personally had gotten to work about 8:15 a. m. and stayed until 5 p. m.; that each morning during that week Durham had arrived at the office "usually by 8:15, not later than 8:20" and that he stayed all day, every day that week, except that on Friday he left around 10 o'clock in the morning.

In reply to Durham's testimony witness Edwards testified: "I knew nothing about the indebtedness of Mr. Durham to either of these ladies at the meeting we had in my office in February, because the inventory in the MacLean estate had not even been filed, and it was when I went through her box at the First National Bank that I learned for the first time that $15,000 in these cashier's checks that are in evidence here, that they had been taken out and cashed and given to Mr. Durham. That is the first knowledge I had of it." Edwards further testified that, when he demanded payment by the letter of April 9, 1954, he knew defendant Durham was denying the claim because: "He had told me that some third party owed it, and that he hadn't borrowed anything and he wouldn't discuss it with me * * *."

Other facts will be stated in course of the opinion.

The trial court held, in conclusion of law number one, that "the $15,000 received by defendants in equity and in good conscience should be paid by defendants to plaintiff and the law implies a promise to repay on the part of the corporate defendant and privity of contract under the facts and circumstances involved herein, and the court finds that the individual defendant expressly promised repayment." The court entered judgment for plaintiff, as stated.

On this appeal, appellants admit that "the evidence was conflicting" and they insist that "all material evidence of respondent was in conflict with appellants' evidence." Appellants, however, had made no assignment that the court erred in entering judgment for plaintiff and against the defendants, instead other specific errors are assigned.

In connection with defendant Durham's testimony, the defendants offered to show that, when defendant Durham called upon Mrs. MacLean and Mrs. Mensendieck and told them the situation with reference to the Board of Trade requirements, they expressed a desire that the Company continue in business because they had a financial interest in the matter as they had approximately $50,000 coming to them on the purchase price, and because of certain sentimental reasons; that there was a full discussion between Mrs. MacLean, Mrs. Mensendieck and Durham of the Winningham note; that it appeared that Winningham had two items of indebtedness due the Company, one on open account and one on the note; that the three parties agreed that Mrs. MacLean and Mrs. Mensendieck were going to give back $15,000 of the purchase price, which was the equivalent of the $15,000 Winningham note; that it was agreed that Durham would retain the balance of the open account in the Company and take the risk on that along with whatever was collected or not collected on the note; that the worthlessness of the Winningham note was the reason the $15,000 was given back to him; and that it was a refund by the

two sellers, and a recognition by them of a moral obligation, if not a legal obligation, because there was no consideration for the modification of the contract.

Plaintiff objected to defendants' offer on the ground that the offer was incompetent under the Dead Man's Statute and also contained evidence excludable as opinions, conclusions, hearsay testimony and self-serving declarations. In various rulings the court made it clear that by reason of the mentioned statute he was excluding the offered evidence only "as to the actual terms of the agreement or conversations" between the mentioned parties.

Appellants contend that "the court erred in excluding from evidence under the Dead Man's Statute, the testimony of appellant Durham as to conversations and transactions had with Ida Mae Mensendieck and Minnie N. MacLean because the Dead Man's Statute had been waived."

Section 491.010 RSMo 1959, V.A.M.S., in part provides: " * * * that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead * * * the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him * * * and where an executor or administrator is a party, the other party shall not be admitted to testify in his own favor, unless the contract in issue was originally made with a person who is living and competent to testify, except as to such acts and contracts as have been done or made since the probate of the will or the appointment of the administrator * * *."

■ The incompetency of a witness under the statute may be and is waived by *the adverse party* taking his deposition in the case, whether the same be filed in court or not. Baker v. Baker, 363 Mo. 318, 251 S.W.2d 31, 33, 33 A.L.R.2d 1431; Ashley v. Williams, 365 Mo. 286, 281 S.W.2d 875, 880; Hodge v. St. Louis Union Trust Co., Mo.

Sup., 261 S.W. 67, 72(5); Rice v. Waddill, 168 Mo. 99, 67 S.W. 605, 609 and Ess v. Griffith, 139 Mo. 322, 40 S.W. 930.

The facts upon which this issue is based are as follows: P. L. Edwards, Executor of the Estate of Ida Mae Mensendieck, deceased, is an attorney at law. P. L. Edwards and Jack Z. Krigel, the attorney for plaintiff in this cause, prior to the trial of this cause in the circuit court, had represented one Claude M. McDonald, who was a defendant in an action then pending in the Federal Court. That action had been instituted by Robert L. Durham, defendant in the present action. Durham in that suit was seeking to establish a resulting trust on the alleged ground that McDonald by undue influence, fraud and conspiracy had prevented Mrs. MacLean from executing a new will naming Durham as a substantial beneficiary. Krigel and Edwards, as attorneys for Claude M. McDonald in that case, took the deposition of Robert L. Durham, the plaintiff in that cause, on April 3, 1958 and, in the course of said deposition, numerous and specific inquiries were made of plaintiff Durham concerning the $15,000 transaction in issue here and Durham was caused to testify as to the circumstances under which the $15,000 was received and as to his dealings and conversation with Mrs. Mensendieck and Mrs. MacLean tending to show the transaction was a gift. The deposition was excluded from evidence in this case and the court held that there was no waiver of the statute by plaintiff in this case since the parties litigant in the Federal Court were not the same as in this case. There is nothing in the record here tending to show that the issues inquired about in the Federal Court case were not material and proper under the issues in that cause.

It further appears from the evidence in the present case that Claude M. McDonald, the defendant in the Federal Court case, was named as the contingent residuary legatee in the will of Mrs. Ida Mae Mensendieck, deceased, the contingency being

the prior death of her sister Mrs. Mac-Lean, who was named as legatee and who predeceased Mrs. Mensendieck. A number of specific contingent cash legacies were also made by the Mensendieck will. There was no showing as to the assets of the Mensendieck Estate or that the prior specific legacies had been paid. There was evidence that McDonald had suggested that Edwards, as executor, institute this action. The administration of the Mensendieck Estate is still pending in the Probate Court of Jackson County.

Appellants' theory is that the taking of the deposition of Durham, plaintiff in the Federal Court case, with respect to the $15,000 transaction between Durham and Mrs. Mensendieck and Mrs. MacLean "constitutes a waiver [of the statute] as to Durham in the instant case." Appellants further argue that, "In the instant case respondent is suing in his capacity as executor of the Mensendieck estate, and is representing, in legal effect, the real party in interest, McDonald, who is residuary legatee of that estate. A judgment, if recovered, inures to the benefit of McDonald."

The trial court applied the mentioned statute by excluding "the actual terms of the agreement or conversations" between defendant Durham and Mrs. Mensendieck and Mrs. MacLean. The court reasoned that since defendant Durham was a party to the lawsuit and was the real owner of and in effect the defendant corporation that to allow defendant Durham to testify as to the terms of the agreement or conversations would be like "letting him testify in his own behalf, both as an individual and a corporation." The court held that the mentioned statute had not been waived by the taking of the deposition of Durham in the case pending in the Federal Court, wherein Robert L. Durham was plaintiff, and Claude M. McDonald was defendant.

■ In their reply brief, the appellants seek to construe their assignment of error on this issue as an assignment of error in excluding defendants' evidence tending to show waiver, rather than excluding the testimony of Durham as to agreements and conversations with the deceased parties. Appellants say that they offered to prove certain facts constituting waiver and "to prove these facts *by said deposition*, but the offer was refused by the trial court upon objection of respondent"; and that, by reason of the court's ruling the "appellants could not prove waiver of the Dead Man's Statute." No such assignment appears under Points and Authorities and additional assignments of error may not be made by the reply brief. Berghorn v. Reorganized School Dist. No. 8, Franklin County, 364 Mo. 121, 260 S.W.2d 573, 580.

In support of the assignment that the court erred in excluding the testimony of defendant Durham as to "conversations and transactions" with the mentioned deceased parties, the appellants cite Baker v. Baker, supra; Lampe v. Franklin American Trust Co., 339 Mo. 361, 96 S.W.2d 710, 107 A.L.R. 465 and other cases.

In Baker v. Baker, supra, 251 S.W.2d 31, 33, 34, the defendant in that case took the deposition of one of the plaintiffs who was a witness to a transaction with a deceased party and read into evidence in that case the deposition of this plaintiff, but contended that two other plaintiffs, who were also present on the occasion involved, were incompetent witnesses under Sec. 491.010 RSMo 1949, V.A.M.S. The court held that the defendant had waived the disqualification of the other witnesses to the same transaction. The court said: "To prevent the statutory disqualification from becoming an instrument of injustice, we have held that, if a party waives said disqualification of a witness, he waives it for all purposes—'he may not limit his waiver.' In re Trautmann's Estate, 300 Mo. 314, 322, 254 S.W. 286, 288[2]; Lampe v. Franklin American Trust Co., 339 Mo. 361, 372, 373, 96 S.W.2d 710, 715[2]. The waiver should

apply to all witnesses as well as to the whole of a witness' knowledge of the facts."

The Lampe case, supra, 96 S.W.2d 710, 714, was a proceeding to establish a note as a demand against the estate of Milton W. Birkenback, deceased. In the first trial of that cause the defendant Executors had caused to be *introduced in evidence* a transcript of the testimony of the plaintiff *Grover W.* Lampe as given in the trial of the claim of *J. L.* Lampe against the Birkenback Estate, wherein " 'defendants had examined and caused plaintiff to testify as to the facts relating to the execution of the note in question and the consideration therefor, and other facts occurring prior to the filing and probate of the will of M. W. Birkenback.' " In other words, the defendants used plaintiff's cross-examination in his brother's case against him in his own case *by offering it in evidence in the case on trial.* The court properly held "that, by *offering plaintiff's former testimony* (about the transaction here at issue) *as evidence in this case,* at the first trial thereof, defendants have waived his competency herein as a witness as to the whole of the transaction between himself and Birkenback concerning the note upon which he bases his claim." And see Cole v. Sweet, 187 N.Y. 488, 80 N.E. 355, to the same effect.

We do not question these cases, but they do not rule the issue presented. In the case before us, the defendants (not the plaintiff) were offering defendant Durham's own deposition for the purpose of showing waiver by the plaintiff herein, but plaintiff herein was not a party to the Federal Court case either personally or in his representative capacity and he did not take Durham's deposition.

■■ The general rule is well stated in 97 C.J.S. Witnesses § 249, page 736: "Although there is some authority to the contrary, it is generally held that a waiver of the incompetency of a witness to testify as to transactions or communications with a decedent extends to another trial of the same cause in the same court, a trial de novo in an appellate court, and to subsequent proceedings generally. The waiver has been held to extend to a subsequent suit involving substantially the same parties and the same issues; *but it does not extend to a different suit between the same parties. A waiver of the competency of a witness in one suit is not a waiver of such incompetency in a different suit between different parties involving the same subject matter."* (Italics ours.)

Crow v. Crow, 124 Mo.App. 120, 100 S.W. 1123 and Merchants Loan & Trust Co. v. Egan, 143 Ill.App. 572 are cited in support of the italicized portion. In the Illinois case it was held that the fact that an interested witness was called by the adverse party in a proceeding to discover assets had under the Administration Act, Section 81, did not render such witness competent in his own behalf in an action subsequently instituted by such adverse party, suing in a representative capacity with respect to the same subject matter.

In the Crow case, the court said: "It is also contended that defendants waived the objection to the competency of plaintiff as a witness in his own behalf in the probate court at the time the note was presented in that court for allowance against the estate of R. M. Crow. We find nothing in the evidence to support this contention; besides, this is a different suit, and is between different parties." 100 S.W. 1123, 1125.

■ It will be noticed that Durham's deposition was taken in another case to which the plaintiff, as Executor of the Estate of Ida Mae Mensendieck, deceased, was not a party; that it was not taken by the adverse party to Durham in this action; that the issues in the Federal Court case were very different; and that plaintiff in this case made no use of Durham's deposition as taken by McDonald in that case. Nor does it clearly appear from the record that all or any part of the claim against defendants, if collected, would inure to the

residuary legatee's benefit, or that the relationship of the Executor herein to the residuary legatee named in the will was so close that the residuary legatee's action and conduct in the defense of litigation pending against him in another court could or should bind the plaintiff in this case on the issue of waiver as applicable to defendant Durham's testimony in this case. The assignment is overruled.

Appellants further contend that the court erred in finding that defendant Durham promised to repay the $15,000 because the finding is based on the testimony of Zonie Glover and the finding is against the weight of the evidence.

■ This cause was tried without the aid of a jury and on this appeal we review the cause upon both the law and the evidence as in suits of an equitable nature. The judgment of the trial court may not be set aside unless clearly erroneous, and due regard must be given to the opportunity of the trial court to judge of the credibility of the witnesses. Supreme Court Rule 73.01(d), V.A.M.R. And see Sec. 510.310 RSMo 1949, V.A.M.S.; Moore v. Adams' Estate, Mo.Sup., 303 S.W.2d 936, 939.

■ Mrs. Glover's testimony was clear, definite and certain as it appears in the record at the trial, and defendants' counsel stated: "This witness is the crux of the case." Mrs. Glover was cross-examined at length and her testimony covers some eighty-seven pages of the transcript. In our opinion the cross-examination which took a wide range, when considered as a whole, tended to support rather than to weaken her testimony. From the cold record it appears that she was trying to correctly relate the facts. The trial judge saw the witness, heard her testimony and observed her demeanor on the witness stand. He believed her testimony. A careful reading of her testimony discloses no sound basis for overturning the trial court's conclusion as to the weight and value of this

witness' testimony. The assignment is overruled.

Appellants further contend that plaintiff is judicially estopped from maintaining the present action against defendant Durham because of the position taken by plaintiff in certain prior judicial proceedings. These proceedings were in the probate court before an Inheritance Tax Appraiser to determine the amount of Inheritance Taxes due In the Matter of the Estate of Ida Mae Mensendieck, deceased. See Sec. 145.150 RSMo 1959, V.A.M.S.

The record shows that, on March 5, 1957, the plaintiff, as Executor of the Mensendieck Estate, appeared before the Inheritance Tax Appraiser in that estate, for the purpose of getting the $15,000 claim against defendant Durham excluded from the Mensendieck estate for tax purposes. The evidence shows that plaintiff had testified that Durham had denied that the $15,000 was a loan; that, in his (plaintiff's) opinion, the amount could not be collected from Durham, as it was his understanding that Durham was not financially able to pay it; and that he considered the claim worthless because of Durham's financial condition. As a result of plaintiff's testimony the appraiser listed the claim against Durham as of no value for tax purposes. In the trial of this cause plaintiff testified that he listed the claim in the inventory; that he did not make the statement that he had "no claim" against Durham; that he may have testified that he could not make a submissible case against Durham, since he had not seen the checks and the endorsements thereon at that time and had no information that Mrs. Glover had any knowledge of the transaction; that he did have information that Durham got the money and "put it in the bank to the Mensendieck Grain Company"; that Durham had told him some "third party had borrowed the money" and "that the loan was a secret"; that Durham had insisted he had never borrowed any money from Mrs. MacLean and didn't owe her any

money; that Durham's attorney took the position the $15,000 in checks "were gifts by Mrs. Mensendieck and Mrs. MacLean to the Mensendieck Grain Company * * * about three years prior to their death"; that he (plaintiff) had come to the conclusion he could not make a case against Durham, but would have to sue the grain company and it was "busted"; that he listed the claim in both Federal and State returns as "an asset with no value"; that at that time he was of the opinion that Durham was not financially able to pay and he could not see any reason to file a lawsuit and reduce the claim to judgment. He said that subsequently he received information that Durham had sold his Board of Trade membership for a pretty good price and had sold or liquidated the business and his financial condition had changed. Plaintiff also testified that he didn't know that he had changed his mind about collecting the claims, but that the residuary legatee, McDonald, was insisting that suit be filed. McDonald had said, "I want you to collect that money." Plaintiff also testified he had written Durham that Mrs. Mensendieck, in her lifetime, had also urged plaintiff to collect the $10,000 Durham had obtained from Mrs. MacLean. Plaintiff's action in instituting and prosecuting this suit under the circumstances shown was not inconsistent with his prior testimony.

■■■ On this record we find no basis for the application of the so-called rule of "Judicial Estoppel", which is said to be designed to preserve the dignity of the courts and insure order in judicial proceedings. See Sturm v. Boker, 150 U.S. 312, 14 S.Ct. 99, 37 L.Ed. 1093. No doubt, if collection is made on this judgment any inheritance tax that accrues will be paid.

Appellants' final assignment is that the court erred in making its finding of fact number 6 and conclusion of law number 2. Finding of fact 6 and 7 and conclusion of law 2, are as follows: "6. Defendant Robert L. Durham was on or about the 9th day of November, 1953, president, director and owner of substantially all of the shares of stock of the corporate defendant. Defendant Durham admitted that the corporate defendant and he were one and the same so far as the Board of Trade was concerned. *The court finds that defendant Durham and the corporate defendant were one and the same so far as the $15,000.00 involved herein is concerned.* 7. The court finds that defendants received said sum of $15,-000.00. * * * 2. The court finds that *defendant Durham is the alter ego of the corporate defendant as to the $15,000.00 received,* as there is such unity of interest and ownership that the separateness of the individual defendant and the corporate defendant has ceased to exist and that an adherence to the fiction of separate existence of the corporate defendant would promote injustice in the case at bar." (Italics ours.)

Appellants insist that the italicized portions are unsupported by any evidence in the record. Appellants contend that for the alter ego doctrine to apply "the facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud and promote injustice." Appellants argue that "there is not the remotest suggestion from the record that, as to the $15,000 in question, the court was required to look through the Company to Durham to avoid sanctioning a fraud and to prevent an injustice;" that "there is no evidence that appellants, or either of them, attempted to use the fiction of the corporate entity as a means of accomplishing a fraud or an illegal act"; and that "there is no basis in the evidence for the trial court's conclusion that Durham was the alter ego of the Company as to the $15,000 received."

■■■ We think the mentioned finding unessential to any issue in the case and that appellants were not prejudiced thereby in view of other findings of fact and conclusion of law number 1, supra. And see 19 C.J.S. Corporations § 839, p. 264. Even

the defendants' offer of proof, which was excluded by the court under the Dead Man's Statute, tends to show a recognition of the identity of interest as between defendant Durham and the corporation.

■■■ The evidence shows that defendant Durham received the $15,000 in cashier's checks, endorsed in blank; that he promised repayment of the amount; and that the checks were delivered to and further endorsed by the Mensendieck Grain Company and deposited in its account. Except for the promise of repayment, these facts appear from the evidence of both plaintiff and defendants. Repayment has not been made. After a careful review of the record de novo, and with proper deference to the trial court's findings, we think the judgment should be affirmed. In re De Gheest's Estate, 360 Mo. 1002, 232 S.W.2d 378, 380(9, 10); Webster v. Sterling Finance Co., 351 Mo. 754, 173 S.W.2d 928, 931.

The judgment is affirmed.

All concur.