Robert P. MOORE, Respondent,

v.

ESTATE of Mary F. ADAMS, Deceased, Ray E. Watson, Executor, Appellant.

No. 45890.

Supreme Court of Missouri,
Division No. 1.

July 8, 1957.

Arkley W. Frieze, Vernie R. Crandall and Frieze & Crandall, Carthage, for appellant.

Charles D. Tudor, Joplin, for respondent.

HOLLINGSWORTH, Presiding Judge.

This is an appeal by Ray E. Watson, executor of the estate of Mary F. Adams, deceased, from a judgment for the sum of $17,210.51 rendered against the estate in the Circuit Court of Jasper County for labor allegedly performed by Robert P. Moore in the repair and maintenance of certain property of deceased pursuant to oral contract with deceased. The appellant denies liability. Jurisdiction lies in this court because the amount in dispute, exclusive of costs, is in excess of $7,500. Article V, Section 3, Constitution of Missouri, V.A.M.S.

Mrs. Adams, a resident of Joplin, Missouri, died testate on the 23rd day of April, 1955, seized of personal property in excess of $16,000 and eleven tracts of real estate of an appraised value of $82,850, all of which were residential properties, except one, a business property. Her will gave one fourth of her estate to each of two sisters, one fourth to a brother and one fourth to respondent-claimant, once referred to in the record as Mrs. Adams' "foster son".

Respondent is also a qualified co-executor with appellant Watson in the administration of Mrs. Adams' estate, but, inasmuch as appellant Watson, in accord with § 473.423 (old § 464.230) RSMo 1949, Supp.1955, V.A.M.S., acts alone in defense of the claim here in issue, we will refer to him as though he were the sole executor.

The claim was originally filed and tried in the probate court of Jasper County, in which trial respondent was sworn and testified as a witness in his own behalf. No record of his testimony at that trial was made. Following judgment for respondent in the probate court, the executor appealed to said circuit court, where a jury was waived and the case tried de novo. At trial in the circuit court, respondent, over objection based upon his incompetency under the Dead Man's Statute, § 491.010, RSMo 1949, V.A.M.S., was permitted to testify to his version of his alleged contract with deceased, the judge predicating his ruling upon a finding that respondent's incompetency under the Statute had been waived by his cross-examination at the trial in the probate

court. The principal assignment of error on the instant appeal is the admission of respondent's testimony in the circuit court, coupled with the further assignment that the evidence is insufficient to support the judgment.

In the trials in the probate and circuit courts, respondent was represented by Hon. Charles D. Tudor; the executor (also a member of the Bar) was represented by Hon. F. H. Richart; and the beneficiaries under Mrs. Adams' will (other than respondent, of course) were represented by Hon. Roy Coyne. In this court, appellant is represented by counsel who did not participate in either of the trials below. At the beginning of the trial in the circuit court, Mr. Tudor, in anticipation of proffering respondent as a witness, advised the court that respondent's incompetency as a witness under Section 491.010 had been waived by the cross-examination of him by the attorneys representing the executor and the heirs at the trial of the claim in the probate court; that, at said trial, respondent's testimony, on direct examination, was confined to identification of himself and the identification and introduction of certain books of account; that, on cross-examination by Mr. Coyne and Mr. Richart, evidence was elicited from respondent concerning the agreement between him and Mrs. Adams; and that, on redirect examination, counsel for the respondent elicited further evidence as to the matters in issue.

Mr. Coyne stated: "We objected to the introduction of any testimony on the part of Mr. Moore, plaintiff or claimant, and then the Court let Mr. Tudor go ahead and examine him on the account. We objected to—generally—to all the testimony because of the Dead Man's Statute and the Court went ahead and let Mr. Tudor prove his account. Now I take it that this case is tried de novo in this Court. It is true, sir, that we did examine him on that account after the Court let it in, but we had made our specific objection to his testimony. * * * I will say to the Court, Mary F. Adams left a will wherein she designated as her co-ex-

ecutors, Mr. Robert Moore and Judge Watson. They took charge of the estate and letters of administration were issued to Judge Watson and Mr. Moore."

Following further colloquy, the court stated that the parties should agree upon "just what happened in the probate court". Thereafter Mr. Coyne stated: "It is stipulated and agreed that the following took place in the Probate Court at the time of the hearing in this matter: That the plaintiff was sworn and his name was given, where he lived, and the counsel for the defendants then made the objection that this plaintiff was incompetent to testify to any conversations taking place between him and the deceased or any business occurrences taking place between him and the deceased or any transactions of any kind in this case which was in issue in the case under the Dead Man's Statute. The Court then sustained part of the objection but permitted the plaintiff to put in evidence his book and then after he was permitted to put his books in evidence, both Mr. Richart and myself cross-examined plaintiff."

Further inquiry on the part of the trial court failed to give the court more definite information until the following occurred:

"The Court: Perhaps the co-executor remembers. Do you have any statement to make on it, Mr. Watson, as to what occurred?

*     *     *     *     *     *

"Mr. Watson: If the Court please, I am naturally hesitant to make any statement about it. You know the circumstances here. Mr. Moore is my co-executor and Mr. Tudor is my nephew. I have asked Mr. Richart to represent me. I have notified Mr. Coyne, who represents the other heirs in this case. When this matter came up in Probate Court after the records had been introduced, I know we had a conference with reference to the very question of whether this plaintiff should be cross-examined because we were aware of

the Dead Man's Statute. We discussed the matter among ourselves and felt we had no witnesses to put on in defense of the case and that the proper thing to do would be to go into the question and cross-examine him to find out from him what had been done in the way of repairs and with reference to the agreement which he had with Mrs. Adams and I feel he was cross-examined rather generally about the entire matter.

"The Court: Gentlemen, I think that I will rule at this time that he is competent. * * *"

█ The forthright statement of the executor, an experienced and able lawyer, amounts to a definite admission that after the probate court, on timely objection, had limited respondent's testimony to showing in whose handwriting the charges in his books of account were made and when they were made, counsel for the executor and the beneficiaries, other than respondent, in accord with priorly planned trial strategy, examined respondent about entirely new and highly material matters, to wit: "what had been done in the way of repairs and with reference to the agreement which he had with Mrs. Adams." By such cross-examination, the estate, through its legal representative, the appellant herein, deliberately waived respondent's incompetency under Sec. 491.010. McCune v. Goodwillie, 204 Mo. 306, 102 S.W. 997; Bussen v. Del Commune, 239 Mo.App. 859, 199 S.W.2d 13, 19; Simmon v. Marion, Mo.App., 227 S.W. 2d 127, 131; Ashley v. Williams, Mo.Sup., 281 S.W.2d 875, 879; Hegger v. Kausler, Mo., 303 S.W.2d 81.

█ Did the waiver of respondent's incompetency to testify in the probate court constitute a waiver of his incompetency in a subsequent de novo trial of the same case in the circuit court? Appellant cites the case of Meffert v. Lawson, 315 Mo. 1091, 287 S.W. 610, 613, in support of his contention that a waiver in the probate court does

not continue as a waiver in the trial court. The case is not in point. It considered a perfunctory cross-examination on an immaterial matter, the court saying, "A mere perfunctory and irrelevant inquiry, such as appears here, would not have that effect." To the contrary of appellant's contention, it is the law in Missouri that the cross-examination of respondent in the probate court on the new matter of the extent of his labor and the terms of his agreement with Mrs. Adams constituted a waiver of his incompetency at the trial in the circuit court for all purposes relating to that subject matter. Imboden v. St. Louis Union Trust Co., 111 Mo.App. 220, 232, 86 S.W. 263, 265; Trautmann v. Trautmann, 300 Mo. 314, 254 S.W. 286, 288; Yawitz v. Laughlin's Estate, Mo.App., 68 S.W.2d 830, 832; Baker v. Baker, 363 Mo. 318, 251 S.W.2d 31, 34, 33 A.L.R.2d 1431. See also Lampe v. Franklin American Trust Co., 339 Mo. 361, 96 S.W.2d 710, 107 A.L.R. 465, and annotation beginning at page 482. The court did not err in permitting respondent's testimony.

██ In determining whether respondent made a submissible case, we review the evidence from his viewpoint, Caswell v. St. Louis Public Service Co., Mo., 262 S.W.2d 40, 42; Machens v. Machens, Mo., 263 S.W. 2d 724, 734; and the cause having been tried without a jury, we review the evidence as in suits of an equitable nature, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses, and we do not set the judgment aside unless it is clearly erroneous. Section 510.310, RSMo 1949, V.A.M.S.; Patterson v. Wilmont, Mo., 245 S.W.2d 116, 122; State ex rel. Lyons v. Maryland Casualty Co., Mo., 278 S.W.2d 754, 755.

█ The evidence justified a finding of the following facts:

Respondent, aged 61 years at trial in circuit court, had lived in the home of Mrs. Adams and her husband from about 1912 to about 1924. Mr. Adams died in October, 1949. Mrs. Adams, due to her age and

physical infirmities, was in need of some one to look after her property, which was in a bad state of repair. In August, 1950, respondent, then living and working in Kansas City as a carpenter, entered into an oral agreement with her, at her instance, whereby he agreed to live in her home and to attend to the repair, upkeep and maintenance of all of her real property, for which he was to be paid, upon her death, the sum of $1.75 per hour, which said hourly wage was by mutual assent thereafter increased to $2 per hour. Beginning shortly after the first of August, 1950, respondent performed in a good workmanlike manner the tasks placed upon him under his agreement until Mrs. Adams' death in April, 1955. He kept a daily record of the number of hours he worked at his tasks on each of the properties from the time he began his work for Mrs. Adams. There were two of these books, one showing the above data from August 18, 1950, to and including December 31, 1952; the other covering the period beginning January 1, 1953, and ending April 22, 1955. These books were placed in evidence and exhibited to the trial judge and are before us. They show a total of 9,785½ hours. For the hours worked by respondent from August 18, 1950, to and including February, 1955, a total of 9,441½ hours, the rate of pay was computed on the basis of $1.75; for the remaining 344 hours, the rate of pay was computed at $2 per hour,—a grand total of $17,-210.51, the amount of the judgment rendered herein. Mrs. Adams knew that respondent kept his accounts in the manner aforesaid, had seen him make entries in the books and had had access to them. Respondent had never received any payment on account of his services.

There was no persuasive evidence to the contrary. A submissible case was made and the trial judge, having seen and heard the witnesses and, obviously, having believed them, cannot be convicted of error.

The judgment is affirmed.

All concur.