Rose Beryl HAYES, Respondent,

v.

James H. CARDWELL, Administrator of the Estate of James O. Cardwell, Appellant.

No. 10567.

Missouri Court of Appeals, Springfield District.

Dec. 11, 1978.

Motion for Rehearing or to Transfer Denied Jan. 9, 1979.

Rehearing Denied Feb. 13, 1979.

McCormick V. Wilson, Jefferson City, for appellant.

Michael P. Riley, Carson, Monaco, Coil & Riley, P.C., Jefferson City, for respondent.

Before FLANIGAN, P. J., STONE and TITUS, JJ., and MOORE, KENNEDY and CAMPBELL, Special Judges.

FLANIGAN, Presiding Judge.

This action originated in the Probate Court of Camden County, Missouri, where plaintiff-claimant Rose Beryl Hayes filed a claim against the estate of James O. Cardwell, deceased. Defendant is the administrator of the estate. The claim contained five "items." Items I, II, and III were adjudicated by the probate court, after a hearing attended by the parties and their attorneys. Neither side attacked that adjudication and those items are not involved in this appeal. Items IV and V are alternative statements of a claim for services rendered decedent by plaintiff. At a subsequent hearing on that claim the probate court entered its order disallowing it. Plaintiff appealed to the circuit court where the cause was tried to a jury and a verdict in the amount of $20,000 was awarded plaintiff. Defendant appeals from the judgment based on the verdict.

Defendant's first "point relied on" is that the circuit court erred in denying defendant's motion to dismiss, the motion being based on the "failure of the plaintiff to

comply with provisions of § 473.400 V.A.M. S." [1]

The pertinent portion of § 473.400 reads: "*Unless expressly waived in writing by the executor or administrator,* a copy of each claim filed against the estate of any decedent on which is endorsed the date of filing, together with a notice stating the time within which offsets or counterclaims may be filed under section 473.410 and also stating the time for hearing as fixed by court rule or by the court, shall be promptly served on the executor or administrator in the manner provided by subdivision (1) of subsection 2 of section 472.100 RSMo, or by ordinary mail, and proof of service in the manner provided by section 472.110 RSMo shall be filed in the court prior to the hearing and allowance thereof. . . ." (Emphasis added.)

Defendant's first point must be considered in the light of certain facts surrounding the processing of plaintiff's claim in the probate court.

On May 30, 1973, Michael P. Riley, attorney for plaintiff, mailed a letter to the clerk of the probate court at Camdenton enclosing the claim of his client and requesting that it be filed. This letter stated that a copy of the claim, and of the letter itself, had been mailed to the administrator and to the administrator's attorney, McCormick Wilson. Both Riley and Wilson had their respective law offices in Jefferson City and the administrator lived in Jefferson City.

On May 31, 1973, the claim was received by the clerk of the probate court and it was filed. On the same date the administrator and attorney Wilson received their copies of the claim and Riley's letter of May 30 to the clerk.

On June 18, 1973, attorney Wilson mailed to the clerk of the probate court a pleading of the administrator and mailed a copy to attorney Riley. The original was received by the clerk on June 19. The first page (caption omitted) of that four-page document reads, in pertinent part:

"MOTION, ANSWER AND SET–OFF

"Comes now James H. Cardwell, Administrator of the Estate of James Okel Cardwell, deceased, and enters his special appearance for this purpose only in the claim of Rose Beryl Hayes and moves that the claim be dismissed for the following grounds:

"1. Claimant has failed to comply with the provisions of Section 473.400 V.A.M.S. relating to Service of Claims and Service of Notice of the filing thereof.

. . . . .

"In the Alternative, and only in the event that this Motion above is overruled by the Court; the Administrator states to the Court in response to the Claim of Rose Beryl Hayes, and the Items thereof, as follows:

. . . "

The remaining three pages of the administrator's pleading responded specifically to each of the five items of the claim and then pleaded a "set-off."

Also on June 19, 1973, attorney Wilson wrote a letter to Janice P. Noland, the probate judge, and sent copies to the administrator and attorney Riley. The caption of that letter referred to "Estate of James O. Cardwell, deceased, Estate No. 1095." The letter reads:

"Dear Judge Noland:

I talked to Mike Riley after he received my responsive pleading.

We are in agreement that it would be proper to submit the first three items of Mrs. Hayes' claim to you separately from the rest. This would be her claim for the bank account and the certificates of deposit as set out in those items of the claim.

The claim for services, Item Four, and the Contract to Will, Item Five, would be heard at a later time.

In order to start on finding a suitable time we can all be available on July 10,

---

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1969, V.A.M.S.

1973, if that is an acceptable date to you. If not, please contact me and Mr. Riley and we will set it at your convenience.

Yours very truly,

McCormick V. Wilson"

On June 21, 1973, the clerk of the probate court, using a "speed letter" form provided her by attorney Wilson, wrote a letter to Wilson informing him that "We have set the hearing for July 10 at 10:00 a. m." and asking Wilson to relay the information to Riley.

On June 25, 1973, attorney Wilson wrote a letter to Riley and sent copies to Judge Noland and administrator Cardwell. That letter reads:

"Dear Mike:

I attach hereto the pink copy of a speed letter from Carol Harper, Probate Clerk, notifying me that this matter is set for hearing on July 10 at 10 A. M. and requesting me to notify you.

It is still my understanding that this will be a partial hearing on your claim dealing with Items 1, 2 and 3 and not dealing with Item 4 or Item 5.

Yours very truly,

McCormick V. Wilson"

On July 13, 1973, a hearing was held in the probate court on Items I, II, and III. Plaintiff and defendant appeared in person and by their respective attorneys. The court, after hearing the evidence, adjudicated those claims. Another evidentiary hearing was held in the probate court on May 15, 1974, and the parties and their attorneys again appeared. It was at that hearing that the instant claim was disallowed.

Defendant asserts that the requirements of § 473.400 were not met in that there was not served on the administrator a copy of the claim "on which was endorsed the date of filing, together with a notice stating the time within which offsets or counterclaims may be filed under section 473.410 and also stating the time for hearing as fixed by court rule or by the court." Defendant also argues that there was no "proof of service filed in the court prior to the hearing and allowance of the claim."

Certain factors should be pointed out before defendant's first point receives disposition. Defendant's present descriptions of the alleged non-compliance are more specific than was ground 1 of his motion to dismiss. It should also be noted that defendant's first point, as does ground 1 of his motion to dismiss, alleges that *plaintiff* failed to comply with § 473.400. However, it seems clear that any non-compliance with the statute was that of the clerk and not of the plaintiff. See the form mentioned in footnote 2.

Claims in the probate court are often processed with less formality than that accorded the handling of petitions in the circuit court. Before a probate claim is filed, the identity of the personal representative is a matter of public record and so is the identity of the attorney for the estate. Attorney Riley's letter of May 30 to the clerk did not instruct the latter to refrain from literal compliance with § 473.400. The clerk knew, however, that the administrator and the attorney had been mailed copies of the claim.

The transcript does not reflect that the administrator's motion to dismiss was brought to the attention of the probate judge or that it received a ruling in that court. The motion is not mentioned in either of the orders of the probate court which adjudicated the two sets of claims. Perhaps it was the strategy of the administrator to permit the motion to lie dormant in the probate file and to refrain from obtaining a ruling on it. If the motion had been pressed, the alleged non-compliance was readily curable by meeting the literal requirements of the first sentence of § 473.400. The motion, as a weapon of frontal assault, would gain only a temporary and hollow victory. Perhaps a more telling result would be won by ambuscade.

As a practical matter each of the purposes sought to be achieved by the first sentence of § 473.400 had been met by what was done in the case at bar. The administrator and his attorney had received a com-

plete copy of the claim.[2] Although their copies did not bear the endorsement of the date the claim was filed,[3] each of them had received a copy of attorney Riley's letter of May 30, 1973, forwarding the claim to the clerk. Letters from attorney Wilson to the clerk and to the probate judge, of which the administrator received copies, demonstrate that Wilson and the administrator knew that the claim had been filed. The administrator did include a "set-off" in his pleading and there is no contention that he was prejudiced by a failure to receive "a notice stating the time within which offsets or counterclaims may be filed under section 473.410."[4] The "time for the hearing" was the subject of correspondence in which attorney Wilson participated and the hearing date was agreed upon.

In fine, if § 473.400 had received literal compliance, the administrator and his attorney would not have received any information which they did not already possess. There is a total lack of a showing of prejudice occasioned by any technical non-compliance with the statute.

It is unnecessary to rule on the significance of the factors just mentioned. Section 472.130 provides in part that an administrator "may make waiver either in person or by attorney." This court holds that Wilson's letter of June 19, 1973, to Judge Noland is sufficient to meet the "express written waiver" requirement of § 473.400.

In that letter, which was written and sent *after* the administrator's motion to dismiss had been filed, Wilson told the court that he and attorney Riley "are in agreement that it would be proper to *submit* the first three items of Mrs. Hayes' claim to you separately from the rest." The letter continues that the claim here involved "would be *heard* at a later time." It is a fair construction of that letter that Wilson intended to abandon, and was abandoning, the motion to dismiss. The particulars of the claims would not be "submitted" to the court if the motion to dismiss were sustained. The motion embraced all five items of the claim and were it to be sustained, there would be no occasion for piecemeal hearings or any further hearing. Wilson's letters of June 19 and June 25 make no mention of the motion to dismiss. The only reasonable construction to be placed upon those letters is that the five items would be heard on their merits.

The administrator had the power to waive the requirements of the first sentence of § 473.400. The statute says so itself.[5] It would be a tortured construction of the statute to say that, by use of the word "express," the legislature intended that the written waiver must make specific reference to the statute. The language of the waiver, contained in the form mentioned in footnote 2, is simply, "service of all notices is waived."

2. Plaintiff's four-page statement of her claim was attached to a printed claim form which is the same as the one set forth in Vernon's Annotated Missouri Statutes immediately following § 473.380. The only portion of the form which was filled in was the forepart which concludes with the signature of the claimant and the jurat of the notary public. Subsequent portions of the form (commencing with that calling for the signature of the administrator with regard to service of all notices, etc.) were not filled in or executed by any person.

3. Notice of the issuance of letters of administration was first published on February 23, 1973. Thus the claim was timely *filed* within the limitation of § 473.360. Date of *filing* is also material under § 473.397 dealing with classification of claims.

4. The portion of the printed form mentioned in footnote 2 entitled "Notice of Filing of Claim," although not filled in, did read: "You have ten

days from the service of this notice to file any off-set or counterclaim which you may have against said claim."

5. In this respect the statute is unlike other portions of the probate code, such as the "non-claim statutes" which "cannot be waived, and, if they are applicable, compliance with said statutes is deemed mandatory and, in effect, jurisdictional." *Strumberg v. Mercantile Trust Company*, 367 S.W.2d 535, 538[2] (Mo. 1963).

Section 473.013 provides that the administration of the estate of a decedent "is deemed one proceeding for purposes of jurisdiction" and "is a proceeding in rem." The statute also says: "No notice is jurisdictional except the notice by publication provided in section 473.033, unless the provision requiring the notice expressly provides that the notice is jurisdictional."

The administrator relies upon language in *Greenwood v. Schnake,* 396 S.W.2d 723 (Mo. 1965) to the effect that a defendant may "probe into the merits of the case without the necessity of making the time-honored 'special appearance' or reserving the jurisdictional point at each stage of the procedure. Having once hoisted the flag at the beginning of the journey a litigant over whose person a court lacks jurisdiction need not continuously wave the flag at every way station along the route."

In *Greenwood,* defendant's motion attacking the jurisdiction over his person was not permitted to lie dormant.[6] It received a specific ruling. Moreover, *Greenwood* was based upon various portions of Rule 55 which deals with pleadings and motions. The instant action originated in the probate court to which Rule 55 is not applicable,[7] Rule 41.01(a), nor was it applicable to the action after it was lodged in the circuit court for the reason that the latter tribunal did not order the application of Rule 55. See Rule 41.01(b).

Missouri courts have construed provisions of the probate code liberally in order to secure a just determination of the proceeding on its merits. See, for example, *Johnson v. Estate of Girvin,* 414 S.W.2d 245 (Mo. banc 1967); *Jensen v. Estate of McCall,* 426 S.W.2d 52, 57 (Mo. 1968); and *State ex rel. Nollmann v. Gunn,* 513 S.W.2d 710 (Mo.App. 1974).

It is the command of Rule 84.13(b) that this court shall not reverse a judgment "unless it finds that error was committed by the trial court against the appellant, materially affecting the merits of the action." To sustain defendant's first point, in light of the instant record, would permit form to triumph over substance and would contravene that mandate.

It is unnecessary to consider whether, under the facts here, defendant's first point is undermined by that portion of § 472.130 which reads: ". . . Any person who submits to the jurisdiction of the court in any hearing waives notice thereof."

Defendant's first point has no merit.

Defendant's second point is that the circuit court erred in failing to dismiss, as premature, plaintiff's appeal from the judgment of the probate court for the reason that the latter judgment was not a final one in that it did not "dispose of all items of this claim against the estate."

In Item IV of her claim plaintiff alleged that she "continuously performed services for the decedent from March 1967 until the time of his death," and listed 7 types of "personal services" and 11 types of "business services" which plaintiff allegedly rendered. Item IV further alleged that plaintiff "received no funds or payment for her work in operating decedent's business or for personal services, although decedent knew and expected to pay for said services; that a reasonable value for said services is $60,000. Amount claimed $60,000."

Item V, pleaded "in the alternative" to Item IV, incorporated all of the allegations of Item IV. In addition, Item V alleged that the decedent and claimant, by express contract, agreed that, in return for the services performed by claimant, decedent would, by his will, give her a named asset having an alleged value of $60,000.[8]

Although both Item IV and Item V stated that the amount claimed, for the item,

---

**6.** "Generally a motion which is never called to the attention of the court is presumed to have been waived or abandoned by the moving party, and, where no ruling appears to have been made on a motion, the presumption is, unless it otherwise appears, that the motion was waived or abandoned." 60 C.J.S. Motions and Orders § 42, p. 63. See also 56 Am.Jur.2d Motions, Rules and Orders § 22, p. 18.

**7.** "Motions are not specifically authorized by the probate code. However, to raise objections appearing on the face of the record and in other instances, motions are appropriate." Maus, Missouri Practice, Probate Law and Practice, Vol. 3 § 512, p. 514.

**8.** See *Jensen v. Estate of McCall,* 426 S.W.2d 52, 58[8] (Mo. 1968) where the court pointed out that a claim couched in similar language did not purport to be an equitable action for specific performance, the prayer being for a money judgment, and upheld the jurisdiction of the probate court over the subject matter of the claim.

was $60,000, the two amounts were not combined in the prayer and the latter sought $60,000 on whichever of the two items was allowed.

After the hearing on May 15, 1974, the probate court entered its judgment. The opening paragraph of the judgment recites that the court "takes up Item IV of the claim." The decretal portion of the judgment reads, "Wherefore, it is ordered, adjudged and decreed that the claim of Rose Beryl Hayes for $60,000 for services shall be disallowed."

Section 473.380, which deals with "form and verification of claims," requires only that a claim be "in writing, stating the nature and amount thereof, if ascertainable," and be accompanied by an affidavit containing certain statements. The statute makes other requirements if the claim is founded on a written instrument.

"[T]he niceties of pleading required in actions initiated in the circuit court need not be observed in proceedings originating in the probate court * * * and a formal pleading is not necessary in presentation of a claim in the probate court." *Malone v. Adams*, 362 S.W.2d 95, 98[2] (Mo.App. 1962).

The relationship between Item IV and Item V may be illustrated by considering a somewhat analogous situation which arose in *J. G. Jackson Associates v. Mosley*, 308 S.W.2d 774 (Mo.App. 1958). In that case, a two-count petition was filed in the magistrate court. Each count sought compensation for services rendered. Count I was based upon an express contract theory and Count II was based on the theory of quantum meruit. The magistrate court entered judgment in favor of the defendant. On appeal to the circuit court, the latter tribunal entered a judgment in favor of plaintiff but the judgment, in the amount of $450, made no reference to the two counts. The

court of appeals held that the circuit court judgment was a final one and that the appeal was not premature. At p. 776 the court said:

"Where the disposition of one count and the entry of a general judgment thereon operates to settle all questions, eliminate all issues as between the parties and preclude a recovery on all other counts, there is a final judgment for the purposes of appeal. The instant appeal falls within that exception. The recovery of $450 plus interest for certain engineering services upon a contract theory settled the question and eliminated the issue whether defendant owed plaintiff $450 for the same engineering services on a theory of quantum meruit, and would preclude a recovery under Count II, for it is certain that plaintiff could not recover twice for the same thing."

■ In the instant case Item IV presented a theory of recovery based on quantum meruit and Item V presented a theory of recovery based upon breach of an express contract. At the pleading stage in the probate court the claimant could not be required to elect between the two theories. *Jensen v. Estate of McCall*, supra, 426 S.W.2d at 56[4]. However, both Item IV and Item V were predicated on the same cause of action [9] or claim. In the language of *J. G. Jackson Associates*, the two items stated alternate theories "for the same thing."

■ If there is an inconsistency between the recitals of a judgment and its decretal portion, the latter controls. *Casper v. Lee*, 362 Mo. 927, 245 S.W.2d 132, 141[27] (1952); see also *Page v. Page*, 516 S.W.2d 537, 539[1, 2] (Mo.App. 1974). Although a recital in the judgment of the probate court mentioned Item IV and did not mention Item V, the decretal portion of the judg-

9. "[T]he essential *character* of the damages, not the amount, is what is contemplated in determining the identity of the transaction. Thus where a plaintiff has a contract for services at a stipulated price (the measure of damages being the *contract* value) he may nevertheless sue in assumpsit as for quantum meruit, and recover the *reasonable* value of the

services, not in excess of the contract value— and still he may introduce the contract in evidence to prove his case without changing the *cause* of action." *Grue v. Hensley*, 357 Mo. 592, 598, 210 S.W.2d 7, 11[5] (1948). (Emphasis in original.)

See also 35 A.L.R.3d 874 Res Judicata—Contracts—Express, Implied.

ment disallowed "the *claim* of Rose Beryl Hayes for $60,000 for services." The decretal portion of the judgment in effect made a final disposition of both Item IV and Item V. It is unnecessary to determine whether the judgment of the probate court would have been appealable if its decretal portion had been limited to Item IV.

Defendant's second point has no merit.

■ Defendant's third point is that the trial court erred in permitting the plaintiff, over the objection of the defendant, "to testify as to acts and contracts done or made prior to the appointment of the administrator, and in her own favor against the administrator as to transactions with the deceased in violation of § 491.010 V.A. M.S."

Section 491.010, "the dead man's statute" [10] was discussed in *Flanagan v. De-Lapp*, 533 S.W.2d 592 (Mo. banc 1976). Pointing out that the statute has "three functional parts," the court said:

"First, it qualifies as witnesses those individuals disqualified at common law because of their interest in the outcome of the case. Next, in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, the so-called *transactions proviso* of the statute makes a surviving party incompetent as a witness in his own favor or in favor of one claiming under him. Under this proviso the witness is incompetent *only* as to those matters about which decedent could have testified if he had lived. Finally, where one of the parties to a contract is deceased, and an executor or administrator is a party to a suit involving such contract, the portion of the statute referred to as the *administration proviso* makes the surviving party to the contract *totally* incompetent as a witness *except* as to matters occurring after probate of the will or appointment of an administrator." (Emphasis added.) *Flanagan* at p. 597.

In the instant action, James Cardwell, defendant's decedent, was an original party "to the contract or cause of action in issue and on trial." § 491.010. Accordingly defendant was entitled to the protection of the transactions proviso. Further, this was an action against an administrator and the "contract in issue" was not "originally made with a person who is living and competent to testify." Accordingly, by reason of the administration proviso, plaintiff "shall not be admitted to testify either in his own favor . . . except as to such acts and contracts as have been done or made since the probate of the will or the appointment of the administrator." § 491.010. Upon proper and timely objection plaintiff should not have been permitted to give testimony which would run afoul of either proviso. See *Birdsong v. Estate of Ladwig*, 314 S.W.2d 471 (Mo.App. 1958); *Thomas v. Fitzgerald's Estate*, 297 S.W. 425 (Mo.App. 1927).

In the trial before the jury in circuit court plaintiff was called as a witness in her own behalf. On direct examination she stated her name, address, and place of current employment. She said she was not

10. "491.010. *Witness' interest does not disqualify—exceptions* No person shall be disqualified as a witness in any civil suit or proceeding at law or in equity, by reason of his interest in the event of the same as a party or otherwise, but such interest may be shown for the purpose of affecting his credibility; provided, that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him, and no party to such suit or proceeding whose right of action or defense is derived to him from one who is, or if living would be, subject to the foregoing disqualification, shall be admitted to testify in his own favor, except as in this section is provided, and where an executor or administrator is a party, the other party shall not be admitted to testify in his own favor, unless the contract in issue was originally made with a person who is living and competent to testify, except as to such acts and contracts as have been done or made since the probate of the will or the appointment of the administrator; provided further, that in actions for the recovery of any sum or balance due on account, and when the matter at issue and on trial is proper matter of book account, the party living may be a witness in his own favor so far as to prove in whose handwriting his charges are, and when made, and no farther."

married and that she had two adult children. Plaintiff's counsel asked the witness if she had ever been married and she said, "yes." At that juncture defendant's counsel, Mr. Wilson, said, "If the court please. I object. This calls for testimony prior to the date of the admission of this will in probate. The executor is a party to this case, the administrator is a party to this case. This witness is incompetent to testify to matters prior to that time." The court overruled the objection.

Plaintiff's counsel then renewed his question concerning her prior marital status. The witness testified that she had been married and that her husband died in 1960. Defense counsel then stated: "I renew my objection on the grounds of her incompetency since the administrator is a party to this proceeding." The objection was overruled.

The following then transpired:

"Q. And what businesses have you been in, Mrs. Hayes?

"A. We have been in . . .

"Wilson: If these have to do with anything prior to that time, I renew the objection on the same grounds of her incompetence to testify under the first provision in the rule, no, under the provision of the rule 491.010 [11] relating to suits involving administrators and executors."

The court informed defense counsel that the objection was overruled. The court also stated: "We'll show that that's a continuous objection as to the competency to anything that happened prior to the probate of the will." [12]

The claimant then testified extensively on direct examination. Her testimony dealt primarily with matters which antedated the appointment of the administrator. She described her relationship with the decedent, which commenced in 1962, including their "business relationship." She described her financial affairs. She gave a detailed description of living with Cardwell at the Silver King Resort (which he owned) from 1967 until Cardwell's death in 1972. She gave testimony concerning the resort business, work she and Cardwell had done together, loans she had made to Cardwell, services she had rendered him, and the fact that she had not been paid for those services. She mentioned temporary separations of herself and Cardwell. In fine she gave a detailed description of the facts on which she based her claim for services. Although the court had informed defense attorney Wilson that his objection, based upon the dead man's statute, was to be considered to be a continuing one, counsel reiterated that objection several times during the course of the witness' direct testimony.

By reason of the administration proviso of § 491.010 plaintiff was not competent to testify as to *any* matters which antedated the appointment of the administrator. Most of her testimony was also objectionable under the transactions proviso.

Plaintiff seeks to counter defendant's third point by making three contentions:

(a) The objections of defense counsel were too general;

(b) The point was not adequately preserved in defendant's motion for new trial; and

(c) The error was waived by defendant's cross-examination of the plaintiff, both in the probate court and in the circuit court.

■ The adequacy of objections based upon the dead man's statute is the subject of authorities discussed in "waiver of the Missouri Dead Man's Statute," 39 Mo.Law Rev. 218 at p. 232. This court holds that the instant objections were sufficiently specific and timely to preserve the error.

---

11. The record makes it clear, and plaintiff does not contend otherwise, that attorney Wilson was referring to the statute, § 491.010, and not to a "rule." The transcript, immediately following Mr. Wilson's statement, contains this entry: "The book was handed to the judge by Mr. Wilson and the judge is reading the statute he is talking about."

12. The fact is that Cardwell died intestate. Plaintiff has not attacked, on the basis of that factual discrepancy, the sufficiency of Wilson's objections. As the opinion reflects, the objections also mentioned that the administrator "is a party to this case" and "is a party to this proceeding."

■ Defendant's motion for new trial contained this assignment: "4. The court erred in admitting the testimony of an incompetent witness over the objection of the defendant when it permitted the plaintiff Rose Beryl Hayes to testify in her own favor against the administrator as to acts and contracts done or made prior to the appointment of the administrator, and as to transactions with the deceased, in violation of § 491.010 RSMo." This court holds that defendant's third point was adequately preserved in defendant's motion for new trial.

■ In support of plaintiff's contention that defendant waived the error by cross-examining plaintiff in the probate court, plaintiff relies on *Moore v. Adams' Estate*, 303 S.W.2d 936 (Mo. 1957). *Moore* is distinguishable. In *Moore*, during the proceeding in the probate court, the claimant's testimony, on direct examination, was limited "to showing in whose handwriting the charges in his books of account were made and when they were made." Counsel for the executor, on cross-examination, examined the claimant "about entirely new and highly material matters, to-wit, 'what had been done in the way of repairs and with reference to the agreement which he had with Mrs. Adams.'" The court held that cross-examination of the claimant in the probate court "on the new matter of the extent of his labor and the terms of his agreement with Mrs. Adams constituted a waiver of his incompetency at the trial in the circuit court for all purposes relating to that subject matter."

The flaw in plaintiff's contention (c), with regard to the trial in the probate court, is that the instant record contains no factual support for that contention. The record is silent as to the content of plaintiff's testimony on direct or cross examination in the probate court [13] and it is also silent with respect to what objections, if any, were made in that court or what rulings, if any, were made thereon.

In the circuit court defendant's counsel did conduct an extensive cross-examination of plaintiff and of course the transcript contains that testimony. Most of it, however, dealt with matters which had been elicited (over defendant's objection) on direct examination.

"It is only where the party insisting upon the incompetency [under § 491.010] nevertheless cross-examines the witness on new matter not touched upon or brought out on the examination in chief that the incompetency is waived and then only as to such new matter. *McCune v. Goodwillie*, 204 Mo. 306, 102 S.W. 997; *Bussen v. Del Commune*, 239 Mo.App. 859, 199 S.W.2d 13, 19." *Hegger v. Kausler*, 303 S.W.2d 81, 88[1] (Mo. 1957).

The direct and redirect examination of plaintiff covers 55 pages of the transcript. The cross-examination covers 37 pages. Only a small portion of the cross-examination dealt with "new matter." There was no waiver of the objection with regard to the topics elicited on direct examination.

Defendant's third point is a valid one.

The judgment is reversed and the cause remanded.

All concur.

---

13. Section 472.140 authorizes the probate judge, on his own motion, or on the request of an interested person, to direct the making of a stenographic record of any hearing in a probate proceeding.